## The Charter Oaks Fire Insurance Company v. Diehl

*Robert A. Weinert,* for plaintiff.
*Mark H. Scoblionko,* for defendant.

WIEAND, *J.,* March 23, 1977 — This civil action based upon alternate counts of trespass and assumpsit is before the court on preliminary objections attacking the sufficiency of plaintiff's complaint.

The complaint alleges that defendant, John Diehl, trading as John Diehl Insurance Agency, sold a policy of automobile insurance, including liability coverage, to Frank Haas, in which Gateway Insurance Company was the insurer. In September, 1974, Diehl received notice from the Insurance Commissioner of Pennsylvania that Gateway Insurance Company had become insolvent and would be liquidated. Despite the Commissioner's recommendation that policies written by Gateway be replaced, Diehl failed to replace promptly the policy sold to Haas and, in fact, neglected to advise Haas that Gateway had become insolvent.

On December 15, 1974, after Gateway had ceased doing business, Haas was involved in a motor vehicle accident. Alan John Shaw, a passenger in the vehicle being driven by Haas, received injuries which resulted in his death. His estate made a claim against The Charter Oaks Fire Insurance Company pursuant to uninsured motorist coverage included in a policy of insurance issued to Shaw during his lifetime. Charter Oaks, the plaintiff in this action, paid the sum of $10,000 to Shaw's estate in full settlement of that claim. The amount paid was the limit of uninsured motorist coverage provided by the policy.

In the instant action, Charter Oaks seeks to recover from Diehl the moneys which it paid to the estate of its deceased insured. It contends that it is subrogated to the rights of its assured. As such, it argues, recovery should be permitted on the grounds that Diehl was negligent and also on the grounds that he breached a contractual duty by failing to notify Haas of Gateway's insolvency. It was Diehl's negligence, plaintiff contends, which

caused Haas to be uninsured and which required it to pay the sum of $10,000 to Shaw's estate.

Plaintiff's action is novel and without precedent. It produces several unique and difficult questions.

Uninsured motorist coverage was mandated by the Act of August 14, 1963, P. L. 909, sec. 1, as amended, 40 P. S. §2000. The coverage provided was to be in the nature of an accident policy and was not intended to provide liability coverage for uninsured motorists: Rhodes v. Automotive Ignition Co., 218 Pa. Superior Ct. 281, 275 A.2d 846 (1971). An "uninsured motor vehicle" is defined by subsection (b) to include, inter alia, a vehicle "where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured . . . because of insolvency."

The subrogation rights of an insurer who has made a payment under the uninsured motorist feature of its policy are defined but also limited by subsection (d) which provides as follows:

"(d) In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. *Whenever an insurer shall make payment under the coverage required by this section, which payment is occasioned by an in-*

*solvency, such insurer's right of recovery or reimbursement shall not include any rights against the insured of said insolvent insurer,* but such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver, and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent insurer might have had if the insured of the insolvent insurer had personally made the payment." (Emphasis added.)

The quoted language, it will be observed, bars plaintiff in the instant case from recovering the money paid to Shaw's estate from Haas, the insured of the insolvent Gateway Insurance Company. Can an action then be maintained directly against the agent whose alleged negligence prevented Haas from being insured in a solvent insurance company on the date of his accident? We think not.

Although the issue apparently has not been presented to the appellate courts of this state, decisions in New Jersey and Illinois have allowed actions by injured third persons against brokers who failed to use due care in providing liability coverage requested by a tortfeasor. They have permitted such actions on the theory that public liability policies are no longer merely private agreements between insurer and insured but contracts required by law and which vest in members of the public the rights of third party beneficiaries. Thus, in Gothberg v. Nemerovski, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965), it was held that judgment creditors of an applicant for a public liability policy,

who had recovered against the applicant as a result of a collision, could maintain an action against the applicant's broker who had failed to procure requested coverage. Also, in Eschle v. Eastern Freight Ways, Inc., 128 N. J. Super. 299, 319 A.2d 786 (1974), an automobile passenger was permitted to sue directly an insurance agent whose alleged negligence in failing to procure requested insurance had left the tortfeasor without liability coverage.

We need not now express an opinion concerning the soundness of these decisions, for in both cases the courts recognized that recovery against the tortfeasor was a condition precedent to an action against the broker who had failed to heed the tortfeasor's request for liability coverage. This seems reasonable. Unless and until it has been determined that an applicant for insurance has committed a tort for which he is liable to a third person, the third person can have suffered no loss for which the broker can be said to be responsible.

In the instant case, it has never been determined that Haas was responsible for the death of Shaw. The damages sustained by Shaw's estate because of his death are also undetermined. Without an unsatisfied judgment against Haas, Shaw's estate can in no way be said to have sustained a loss because of Diehl's negligence in failing to maintain adequate insurance coverage. If Shaw's estate cannot maintain an action against Diehl without first recovering a judgment against Haas, certainly plaintiff insurer cannot do so. Moreover, it is barred by statute from bringing an action against Haas, and should not be permitted to cir-

cumvent this statutory proscription by maintaining an action directly against the broker.

It is also clear under existing substantive law that Diehl owed no duty to plaintiff insurance company. The applicable rule of law appears in the Restatement 2d Agency §357, as follows: "An agent who . . . negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed." Although Diehl certainly owed a duty to exercise due care in handling the insurance business of Haas, that duty was not owed to Shaw's insurance company and did not inure to its benefit. It has not been suggested, nor can it be, that in issuing Shaw's policy against accident, plaintiff relied upon Diehl's exercise of care in the handling of Haas' insurance affairs. See: DeJesus v. Liberty Mutual Insurance Co., 423 Pa. 198, 223 A. 2d 849 (1966).

For all these reasons, we conclude that the present action cannot be sustained and must be dismissed. Plaintiff company will not be permitted to shift the loss which it paid under its uninsured motorist coverage to a broker who failed to notify the alleged tortfeasor that his liability company had become insolvent.

## ORDER

Now, March 23, 1977, for reasons set forth in an accompanying opinion, it is ordered that defendant's preliminary objections in the nature of a demurrer be and the same are hereby sustained, and plaintiff's complaint is dismissed.