103 N.J. Super. 345 (1968)
247 A.2d 172
CHRISTINA DEBLON, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CHARLES DEBLON, DECEASED AND CHRISTINA DEBLON, INDIVIDUALLY, PLAINTIFF,
v.
LESLIE BEATON AND CATHERINE FOLEY AND JERSEY INSURANCE COMPANY OF NEW YORK OF THE PACIFIC OF NEW YORK GROUP, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 23, 1968.
*347 Mr. David F. Toomey, Jr., for plaintiff (Messrs. Breslin and Breslin, attorneys).
Mr. Albert E. Fershing for defendant Jersey Insurance Company of New York of the Pacific of New York Group (Messrs. Bennett & Bennett, attorneys).
SIMPSON, J.C.C. (temporarily assigned).
Christina Deblon, widow of Charles Deblon, instituted suit against the owner and driver of a motor vehicle in which her decedent was a passenger, charging negligence and claiming per quod damages individually, Survival Act damages as general administratrix of decedent's estate, and Wrongful Death Act damages as administratrix ad prosequendum. Allstate Insurance Company's ["Allstate"] liability policy, with a $50,000 limit of bodily injury liability for one person, covered the named insured owner, Catherine Foley, and also covered the driver, Leslie Beaton, under the usual omnibus clause. Leslie Beaton was also the named insured under a liability policy issued by Jersey Insurance Company of New York of the Pacific of New York Group ("Jersey"), which policy, if effective, would be "excess insurance" up to its $10,000 limit, after the primary Allstate insurance, under the standard "other insurance" clause. Jersey apparently denies coverage and has filed a disclaimer, for reasons not germane to the *348 present inquiry, but if its policy is effective, it is only as excess insurance and there is no question of mutually repugnant excess coverage clauses as in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959).
Christina Deblon, in all three capacities as a plaintiff, executed a "covenant not to sue on claim," reciting a consideration of $46,500 and purporting to release only Leslie Beaton, Catherine Foley and Allstate Insurance Company while "reserving unto her as general administratrix and administratrix ad prosequendum of the estate of Charles Deblon the right to proceed against * * * the Jersey Insurance Company of New York * * *." Additional language of the instrument stated that "Christina Deblon in no way releases (Jersey) and no rights are waived against said parties [Beaton and Foley] as named assureds under * * * said policy * * *."
Plaintiff originally sought an order construing the covenant as effectively preserving her rights against defendants Beaton and Foley as named assureds under the Jersey policy, and this court directed that Jersey be added as a party defendant and indispensable to such a binding determination. R.R. 4:32-1 and 4:34. A count was added to the complaint and directed to Jersey, resulting in the latter's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to R.R. 4:12-2(e). Matters outside the pleadings, such as insurance policies, have been presented to the court by the parties; there is no genuine issue as to any material fact and the questions presented are matters of law, so that the motion under R.R. 4:12-2(e) is treated as one for summary judgment under R.R. 4:58.
Jersey contends that the wording of the covenant released its assured, Leslie Beaton, thus precluding any effective reservation of rights against it; and further contends that regardless of the efficacy of the words used, the goal of plaintiff to release the individuals and the primary insurance carrier, while retaining the right to recover from the excess insurance carrier, is legally impossible and a nullity.

*349 I
The first question is the meaning of the words used in the covenant not to sue. Taken out of context, as Jersey reads the instrument, certain clauses appear to release Leslie Beaton and Catherine Foley generally, so it is argued that the result is to preclude any claims against Jersey. The entire instrument, however, clearly reveals an intention to release Beaton and Foley only to the extent of their personal assets and their Allstate insurance coverage, while retaining a claim to their Jersey coverage. The intention of the parties to the instrument governs, of course, and that intention binds strangers to the instrument. Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). Even if there was any doubt as to the meaning of the words used, the intention is clear when the general tenor and purpose of the instrument is considered in the light of the surrounding circumstances. Casriel v. King, 2 N.J. 45, 53 (1949). The circumstances are claims against an owner and driver, both covered by a primary insurer up to $50,000, with an excess carrier disclaiming as to coverage. Furthermore, the excess coverage is a maximum of $10,000, and plaintiff has settled with all except the excess carrier for $46,500 of the $50,000 available primary coverage.
The intention of the parties is therefor crystal clear, with a question only raised because of the clumsiness of the language employed in the instrument. Doubtless this results from the common law distinction between a covenant not to sue and a general release, with the additional aspect of an attempt to reserve only a right to proceed against what might be described as the excess insurance portions of alleged tortfeasors.
The covenant in question is therefore construed to release Beaton and Foley to the limit of their personal assets and the protection of their Allstate coverage, with a reservation of rights against any coverage afforded by Jersey.

*350 II
Jersey also contends, however, that plaintiff simply connot release the personal assets and primary insurance coverage of Beaton and Foley and in effect proceed only against the excess insurance carrier. The question appears to be novel in New Jersey; indeed, no reported opinions in the United States have been found, except where statutes permitted partial releases or direct action against insurers.
Farmers Mut. Automobile Ins. Co. v. Drane, 383 S.W.2d 714 (Mo. Sup. Ct. 1964), is illustrative of cases wherein a tortfeasor and one insurer settle with a claimant, and the claimant proceeds against another insurer, under a statute permitting a contract to limit recovery to specified assets or insurance contracts. Similarly, in Futch v. Fidelity & Casualty Company, 136 So.2d 724 (La. Ct. App. 1961), affirmed 246 La. 688, 166 So.2d 274 (La. Sup. Ct. 1964), under a Louisiana direct action statute it was held that a release given by a claimant upon settlement with a primary insurer, without prejudice to rights against the excess insurer, did not preclude further recovery against the excess insurer even though the release stated it released the claims against the insured. To the same effect, Benroth v. Continental Cas. Co., 132 F. Supp. 270 (U.S.D.C. La. 1955).
In the present case Jersey raises all the arguments rejected in the afore-cited Missouri and Louisiana cases, the disposition of which did not turn upon the particular statutes in those states. New Jersey jurisprudential guideposts point to similar rejection. Thus, Jersey argues that plaintiff is precluded because its liability under its policy is "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages," and its insured cannot become "legally obligated to pay" anything because of the covenant not to sue. Such a conclusion might be tenable if the policy was one of indemnity against loss, rather than insurance against liability. Under New Jersey law the distinction is clear, Viddish v. Hartford Acc. and Ind. *351 Co., 41 N.J. Super. 221, 225 (App. Div. 1956), and there is a strong public policy in this State favoring the availability to injured persons of the liability insurance of those whose negligence is the cause of their plight. Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 321 (App. Div 1967). Furthermore, upon the happening of an accident an injured party acquires an interest in an insurance policy which may be available, In re Estate of Gardinier, 40 N.J. 261, 265 (1963), and that construction of such policy should be adopted which will afford the widest possible coverage. American Policyholders Ins. Co. v. Portale, 88 N.J. Super. 429, 439-440 (App. Div. 1965). Accordingly, the policy clause, "legally obligated to pay," cannot receive the narrow construction sought by Jersey, grounded as it is in the rather metaphysical approach that the covenant not to sue released Jersey's insured in toto, despite its clear intention not to do so. All that is required is a jury verdict of negligence and damages in excess of the primary coverage, with Jersey retaining its right to a judicial determination on its disclaimer. Manukas v. American Ins. Co., 98 N.J. Super. 522 (App. Div. 1968).
Meaningless technicalities aside, the public interest points toward resolution of the competing interests to permit plaintiff to settle claims against the assets of two of the three exposed entities without releasing the third. The interest of a plaintiff is full compensation, and from his viewpoint it makes no difference whether a recovery is paid by a tortfeasor, his primary insurance carrier, his excess carrier, or any combination of the three. Insurance, of course, is an instrument of social policy that victims of negligence be compensated, and such compensation is in the public interest. Cooper v. Government Employee's Ins. Co., 51 N.J. 86, 94 (1968). The interest of defendant tortfeasors is to conclude the case within the limits of their insurance coverage. As noted in Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62, 71 (1968), the purpose of liability insurance is to protect the assured from liability within the limits of an insurance *352 contract, and an insurer cannot frustrate that policy by a selfish decision as to settlement which would expose an insured to a judgment beyond the purchased protection. Plaintiff, of course, could ordinarily not recover from Jersey any more than its policy limits. Since a carrier has a duty to act in good faith where its interests conflict with those of the insured in connection with settlement negotiations, it certainly cannot complain about the partial settlement, as in the present case, after disclaiming and refusing to negotiate at all. The law, in addition, favors settlements, Liguori v. Allstate Ins. Co., 76 N.J. Super. 204, 213 (Chan. Div. 1962), and the partial settlement achieved in this case does not prejudice Jersey. As a matter of fact, it aids Jersey in the sense that the release of the individual defendants as to their personal assets will preclude any exposure of Jersey to liability beyond its policy limit, as in Bowers, supra.
Finally, Jersey argues that permitting plaintiff to settle with the individual defendants and the primary insurance carrier, without releasing the excess carrier, will encourage collusion between claimants and insureds. The answer is that insurers can always rely on the required "cooperation" clauses of their liability policies, as well as disclaimer procedures always available. The fact is, in the present case, that the primary liability insurer, to effect a saving on its policy limits, has settled with plaintiff, and such carrier could not settle its exposure without obtaining a release as to its assureds' personal assets. No obligation runs from the primary carrier to the excess carrier, nor is the latter prejudiced by the partial release in favor of the paying carrier and the concomitant release of its insured. This accords with the modern view that the legal effect of a release on strangers thereto should be determined by the intent of the parties to the release and the extent of compensation paid to the releasor rather than upon outmoded concepts of ancient times. Breen v. Peck, 28 N.J. 351, 357 (1958).
Defendant, Jersey's motion is denied.