128 N.J. Super. 299 (1974)
319 A.2d 786
ELLEN ESCHLE, AN INFANT BY HER G/A/L, KARL ESCHLE AND KARL ESCHLE AND MARGARET ESCHLE, INDIVIDUALLY, PLAINTIFFS,
v.
EASTERN FREIGHT WAYS, INC., JANET SHERWIN AND GREGORY P. SHERWIN, DEFENDANTS/THIRD PARTY PLAINTIFFS,
v.
RICHARD J. CARLSON AND TRANS-AMERICA INSURANCE COMPANY, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
April 19, 1974.
*301 Mr. Clifford J. Sheehan argued the motion for plaintiffs (Messrs. Hueston and Hueston, attorneys).
Mr. Kenneth J. Grispin argued the motion for defendants and third-party plaintiffs Janet Sherwin and Gregory P. Sherwin (Messrs. Shear and Kraus, attorneys).
Mr. Richard J. Sauerwein argued the motion for third-party defendant Richard J. Carlson.
DREIER, J.D.C., Temporarily Assigned.
Defendant Richard J. Carlson has moved for an order dismissing the amended complaint as to him on the ground that it fails to state a claim upon which relief may be granted. A companion motion requests severance of the claims if the first motion is denied. The case is one of novel impression in New Jersey and, for the reasons hereinafter stated, the motion for dismissal must be denied.
Plaintiff was a passenger in a vehicle which struck the rear of a tractor-trailer in Maryland. She instituted suit against the owner and operator of the car in which she was a passenger and against the owner and operator of the tractor-trailer. By third-party complaint the owner of the passenger car impleaded the liability insurer and defendant Carlson, the insurance agent or broker, alleging as to him both negligence and breach of contract, since the insurer claimed that its policy had lapsed and had been cancelled. Thereafter plaintiff amended her complaint asserting direct claims against the insurance company and defendant Carlson.

I
The first question in this case is whether an insurance agent or broker may be liable to an injured member of the public for the negligent failure of the agent or broker to procure requested insurance, or for the breach of a contract to procure such insurance.
*302 In reality, both the negligence and contract claims turn on the same issue, viz., is there duty owed by the insurance agent to members of the public, which duty is breached by the failure to obtain requested coverage. Whether the breach was occasioned by negligence or constituted a failure to perform a contract must await trial.
In the contract terminology, the public can be seen as the third-party beneficiary of an agreement between the agent and the insured. There is no question that the applicant himself is a beneficiary of the contract, but the public policy of this State goes further. Our policy is to see that drivers are insured, not only for their own benefit (to protect their assets in the event of a liability claim), but also to provide a fund from which the damage claims of others may be satisfied. See Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966); Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488, 495-496 (1960); Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 321 (App. Div. 1967); Deblon v. Beaton, 103 N.J. Super., 345, 351 (Law Div. 1968). The public is a third-party beneficiary of such an agreement, whether the public's interest is classified under the common law classifications of donee, creditor or incidental beneficiary.
Our modern statutes requiring insurance or providing for coverage by an Unsatisfied Claim and Judgment Fund recognize that the public expects a source of payment beyond the means of the individual tortfeasor. When the agent or broker contracts for the insured to procure insurance, it is to satisfy this public policy of the State, as well as the desires of the insured. The beneficiaries of the agreement are not merely the insured who will have obtained coverage, and the insurance company which will obtain the premium, but also a potential injured party who will have a fund from which he can receive payment. The contract is made for his benefit as surely as if the provision appeared therein. His right of action is confirmed by N.J.S.A. 2A:15-2, which states:
*303 A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him although the consideration of the contract did not move from him.
In the negligence field, in order to render the defendant liable, there must be found a breach of a duty, which duty, if observed, would have averted the plaintiff's injuries (financial in our case). Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963). The definition of a legal duty, in the negligence sense, has been best expressed in Wytubeck v. Camden, 25 N.J. 450 (1958). Justice Heher there noted:
"Duty" is not an absolute conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957). In the field of negligence, duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk"; the essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser on Torts (2d ed.), section 36. Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.

* * * * * * * *
"Duty" is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say of recognizable danger of injury". Prosser, Ibid., section 30. [at 461-462]
To apply these standards to our case, we must step back from the parties involved and see what are the foreseeable effects from an insurance agent's or broker's actions. In the same manner as in the earlier contract discussion, we *304 can see the effect upon the public if the insurance is not procured; the potential lack of recompense to a potential injured party is a natural and foreseeable result of an agent's or broker's actions if he negligently fails to obtain proper coverage in accordance with his instructions.
The court has been able to discover only one case directly on point, Gothberg v. Nemerovski, 58 Ill. App.2d 372, 208 N.E.2d 12 (App. Ct. 1965), and the majority there held that a judgment creditor of a public liability policy applicant had a sufficient interest in the undertaking of a broker to procure coverage to bring suit directly against the broker. The Illinois court, as this one, was not impressed with the differences between the negligence or contract theories. The essential finding was that the defendant broker unconditionally undertook to procure insurance on behalf of the applicant. Either (1) his breach of such contract, with the plaintiff considered a third-party beneficiary, or (2) his negligence in performing the contract, with the law implying a duty not only to the potential insured and insurance company  could be a basis of liability. With respect to the third-party beneficiary theory, the court in Gothberg stated:
In substance, defendant contends that the plaintiffs cannot recover under the third party beneficiary doctrine because the contract was not made for their direct benefit, and, if anything, they are only incidental beneficiaries [citing defendant's arguments as to Illinois law].
Because of the peculiar significance of automobile liability insurance as well as the provisions of the policy contemplated by the parties and eventually issued, we do not agree with defendant's theory. We believe that these plaintiffs can sue defendant directly. The plaintiffs can be considered third party beneficiaries of the contract to procure insurance entered into between Jackson and defendant, that is, they had a sufficient interest in such a contract to bring suit directly for its breach. In entering into this contract to procure insurance, it is a fair and reasonable inference that Jackson and his mother were contemplating possibly injury to unidentified third parties, and the insurance coverage was for the direct benefit of third parties who might be injured through Jackson's negligence. Because Jackson, as the insured, was to be directly benefited by the insurance *305 coverage, does not preclude the fact that others were also intended to be directly benefited.

* * * * * * * *
The fact that plaintiffs' identity may not have been known at the time the contract to procure insurance was made does not prevent them from assuming the status of third party beneficiaries. [citing cases] [208 N.E.2d at 19-20]
Cf. Shea v. Jackson, 245 A.2d 120 (D.C. Ct. App. 1968), as to a donee-beneficiary of life insurance; Johnson v. Holmes Tuttle Lincoln-Mercury, Inc. 160 Cal. App.2d 290, 325 P.2d 193 (D. Ct. App. 1958), as to an auto dealer's failure to procure requested insurance; and James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558 (1950), as to the obligation of a contractor to see that its subcontractors carried auto liability insurance. In this latter case, the court noted:
* * * If it be assumed that the motive of North American was only the selfish one to protect itself and not that of benefiting third parties, it does not follow that it did not intend to benefit third parties. Motive and intent are not synonymous. * * * The intent of the requirement that the contractor should see that all subcontractors carry automobile liability insurance was necessarily to provide a method by which claims of liability of the type insured against could be paid by insurers. Respondents' claim is of that type. * * * It follows that, in our view, respondents were entitled to maintain this suit on the contract. * * * [233 S.W.2d at 561-562]
So in our case. The intent of the alleged agreement with defendant Carlson was that liability claims of injured parties would have a source of payment. This, the very purpose of the coverage, must be deemed to have been within the contemplation of the parties.
In the Gothberg case plaintiffs were already judgment creditors, and it may be argued that plaintiff in our case, possessing an inchoate claim, should not be accorded the same benefits. Such an argument ignores the provisions of R. 4:27-2 which reads:
Except as provided by N.J.S. 2A:50-2 [bond secured by mortgage], if a claim is one heretofore cognizable only after another *306 claim has been prosecuted to a conclusion, then the 2 claims may be joined in a single action, but the court shall grant relief therein only in accordance with the relative substantive rights of the parties * * *.
In the trial of the cause it should be no problem for the court to insure that defendant insurance agent will not be liable unless it is first shown that the claim has been proven against the applicant and also that the policy obtained did not afford the requested coverage.
This case does little more than synthesize two established rules in New Jersey law. First, that an insurance agent is liable to the potential insured for the failure to obtain such coverage, Rider v. Lynch, 42 N.J. 465 (1964), and second, that an injured party acquires an interest in an insurance policy which may be available to cover the accident. In re Gardinier, 40 N.J. 261, 265 (1963); Deblon v. Beaton, supra, 103 N.J. Super. at 345-351. If the agent stands in the shoes of the company which would have issued the policy (had he not been negligent or breached his contract), there is no reason to deny the direct action against him, combining these two lines of cases. To hold to the contrary would be to insulate the agent from the consequences of his acts, and leave the public without adequate protection. See Sneed v. Concord Ins., Co., supra, 98 N.J. Super. at 321.
For the reasons stated, defendant's motion to dismiss the amended complaint is denied.

II
Defendant has made a second motion to sever the issues of liability of the agent from the issue of liability for the accident. Of necessity these issues must be severed. If the same jury were to hear both issues, and determine the issue coverage or agent's negligence at the same time as the principal liability question, the finding of liability well could be colored by the presence or absence of insurance. In addition, generally an injured party has no right of direct action against an insurer of the tortfeasor prior to recovery *307 of judgment. Manukas v. American Ins. Co., 98 N.J. Super. 522 (App. Div. 1968). But even this latter case notes that:
Plaintiff could have included a declaratory judgment action against American [the insurer] in the action against the church [the insured], or instituted a separate declaratory judgment action joining the church as a party, but it cannot maintain the present action [for damages against the insurance company alone] * * *. [at 525]
What plaintiff in our case has attempted to do is precisely what the court suggested in the Manukas case, i.e., to join the two claims in one action. See also R. 4:27-2. What is requested here is the severance of the claims for the purpose of trial only, so that the jury will not be prejudiced. This motion will be granted, and this court understands that all parties have consented to this portion of the Court's order.