266 N.J. Super. 471 (1993)
630 A.2d 302
CHERYL WERRMANN AND GEORGE WERRMANN, PLAINTIFFS-APPELLANTS,
v.
ARATUSA, LTD., A NEW JERSEY CORPORATION, DEFENDANT/THIRD-PARTY PLAINTIFF, AND R. BRUCE HILL AGENCY, THIRD-PARTY DEFENDANT/RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1993.
Decided July 27, 1993.
*472 Before Judges HAVEY, STERN and BROCHIN.
William M. Feinberg argued the cause for appellants (Feinberg, Dee & Feinberg, attorneys; Mr. Feinberg on the brief).
*473 Mary L. Cole argued the cause for respondent (O'Meara & Hight, P.C., attorneys; Ms. Cole on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
On December 31, 1987, plaintiff Cheryl Werrmann sustained personal injuries while a patron of the Aratusa Supper Club, a boat-restaurant moored in Secaucus. Plaintiff attempted to sit on a bar stool which slid out from under her. She instituted suit against defendant Aratusa, Ltd. (Aratusa) seeking to recover damages for her personal injuries.[1] Aratusa, in turn, filed a third-party complaint against R. Bruce Hill Agency (Hill), Aratusa's insurance broker, claiming that Hill negligently failed to renew a general liability policy covering Aratusa's premises. Aratusa's policy had lapsed approximately two months before plaintiff's accident. Plaintiff thereupon amended her complaint naming Hill a direct defendant, claiming she was a third-party beneficiary of Hill's agreement with Aratusa to procure insurance. She also advanced a negligence theory, asserting Hill owed her a duty, and breached that duty by not maintaining liability coverage on Aratusa's behalf.
Aratusa's claim against Hill was dismissed for Aratusa's failure to answer interrogatories. Hill then moved to dismiss plaintiff's claim on the ground that plaintiff failed to state a claim upon which relief could be granted. The trial court granted the motion, concluding that Hill owed no duty to plaintiff, and that she was not an intended third-party beneficiary of the contract between Aratusa and Hill. Thereafter, Aratusa defaulted on plaintiff's claim against it. At a proof hearing plaintiff was awarded $85,000 in damages against Aratusa. We are advised that the award is uncollectible because Aratusa is judgment proof. Plaintiff now appeals the order dismissing her complaint against Hill. We reverse.
*474 To recover under a negligence theory, the defendant must owe a duty to the plaintiff. Strachan v. John F. Kennedy Mem. Hosp., 109 N.J. 523, 529, 538 A.2d 346 (1988). It is of course settled that an insurance broker owes a duty to his principal to exercise diligence in obtaining coverage in the area his principal seeks to be protected. Rider v. Lynch, 42 N.J. 465, 476, 201 A.2d 561 (1964). The question here is whether that duty is also owed to a member of the general public who is injured as a result of the negligence of the principal.
Reasonable foreseeability of harm is essential to the creation of a duty. Hill v. Yaskin, 75 N.J. 139, 143-44, 380 A.2d 1107 (1977). The inquiry is whether it is foreseeable to a reasonable person that his conduct will create an enhanced risk to those coming within the range of such a hazard. Ibid. See also Johnson v. Usdin Louis Co., 248 N.J. Super. 525, 529, 591 A.2d 959 (App.Div.) (discussing the elements of a legal duty), certif. denied, 126 N.J. 386, 599 A.2d 163 (1991). However, duty is not established solely by recourse to "foreseeability." Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962). "The question of whether a duty exists is a matter of law ... and is largely a question of fairness or policy." Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991); accord Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110, 1116 (1993); Strachan, 109 N.J. at 529, 538 A.2d 346. The question "involves a weighing of the relationship of the parties, the nature of the risk, ... the public interest in the proposed solution," Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984), and any other surrounding circumstances. Johnson, 248 N.J. Super. at 529, 591 A.2d 959.
The only New Jersey reported case on point is Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299, 319 A.2d 786 (Law Div. 1974). There, a passenger injured in a motor vehicle accident sued the driver's insurance agent because the driver's liability policy had lapsed. The Law Division found that the passenger, as a member of the general public, had both a third-party *475 beneficiary-breach of contract and negligence claim against the agent. Id. at 305-06, 319 A.2d 786. The court based its holding in part on the public policy underlying mandatory automobile liability insurance: "to see that drivers are insured" and to create a fund from which the public may expect a source of payment beyond the means of the tortfeasors. Id. at 302, 319 A.2d 786. In finding the agent owed a duty to the general public, the court stated that "the potential lack of recompense to a potential injured party is a natural and foreseeable result of an agent's or broker's actions if he negligently fails to obtain proper coverage in accordance with his instructions." Id. at 304, 319 A.2d 786 (emphasis added). It added:
This case does little more than synthesize two established rules in New Jersey law. First, that an insurance agent is liable to the potential insured for the failure to obtain such coverage, and second, that an injured party acquires an interest in an insurance policy which may be available to cover the accident. If the agent stands in the shoes of the company which would have issued the policy (had he not been negligent or breached his contract), there is no reason to deny the direct action against him, combining these two lines of cases. To hold to the contrary would be to insulate the agent from the consequences of his acts, and leave the public without adequate protection.
[Id. at 306, 319 A.2d 786 (citations omitted).]
We find Eschle's reasoning compelling and persuasive. It is true that the court bottomed its analysis in part on the agent's failure to procure mandatory automobile insurance. Nonetheless, the essence of its holding is that it is reasonably foreseeable, from the viewpoint of an insurance agent or broker, that an innocent party who is injured by the tortious conduct of the insured may be left without a means of redress if the insured's liability policy is allowed to lapse. That reasonable foreseeability exists whether the insurance is mandatory or optional. In our view, it is patently unfair to forfeit the injured party's unquestioned interest in the insured's liability policy, see In re Gardinier, 40 N.J. 261, 265, 191 A.2d 294 (1963), and his or her right to be made whole simply because of the fortuitous circumstance of the broker's negligence which results in the lapsing of the liability policy.
*476 Moreover, after obtaining judgment against Aratusa, plaintiff could have obtained an assignment from it of its broker's-negligence claim against Hill, and pursued that claim as an assignee. See N.J.S.A. 2A:25-1. In our view, it is nonsensical, unfair and contrary to the public interest, see Kelly, 96 N.J. at 544, 476 A.2d 1219, to recognize plaintiff's cause of action as an assignee, but not her right to sue as a member of the general public whose right to recover has been compromised or entirely foreclosed by the very conduct that would have formed the basis of Aratusa's assigned claim against the broker.
We also believe that plaintiff has a claim as a third-party beneficiary of the agreement between Aratusa and Hill. To determine whether a person qualifies as a third-party beneficiary, the test is "`whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts....'" Rieder Communities, Inc. v. North Brunswick Tp., 227 N.J. Super. 214, 222, 546 A.2d 563 (App.Div.) (quoting Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 77, 11 A.2d 83 (E. & A. 1940)), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988); see also N.J.S.A. 2A:15-2 (a person for whose benefit a contract is made may sue on it in a court of law). It is not necessary that an intended beneficiary be identified when the contract containing the promise is made, Restatement (Second) of Contracts § 308 (1981), and the promisee's obligation to pay the beneficiary need not be in existence at the formation of the contract. Id. § 302 illus. 3.
As stated, Eschle held that a member of the general public was deemed an intended beneficiary under a contract between an insured and his insurance agent, in part because the public expects that a source of payment will be provided by mandatory automobile insurance. 128 N.J. Super. at 302, 319 A.2d 786. However, in other jurisdictions, courts have held that it is of no significance whether the coverage is mandatory or optional. For example, in Flattery v. Gregory, 397 Mass. 143, 489 N.E.2d 1257, 1260-62 (1986), the Massachusetts Supreme Court held that the plaintiff, who was injured in a car accident, had a cognizable breach of *477 contract claim against the insurance agent. In reaching that conclusion, the court noted that plaintiff would have benefitted from the agent's agreement to procure insurance since, if the policy was in effect, he would have received payment from the carrier for his injuries. Id., 489 N.E.2d at 1261. Next, the court reasoned that plaintiff was an intended beneficiary of the agreement, stating:
Although the owner of a motor vehicle may be motivated to obtain optional liability insurance coverage solely by a selfish interest to protect his assets, rather than by concern for the needs of parties negligently injured by him, the fact is that a motor vehicle owner achieves that protection by entering into a contract the very object of which is the payment ... of judgments against him. The parties to the insurance policy, or, as in this case, to a contract to procure such a policy, intend the injured third-party judgment holder to benefit from their contract. It makes no difference, therefore, whether the insurance is compulsory or optional

[Id. at 1262 (emphasis added).]
See also Baldwin v. Mortimer, 403 Mass. 142, 526 N.E.2d 776, 777 (1988) (foreseeable reliance on the promised services being performed by someone is required before a promisor of services may be held liable "in tort not only to the promisee but also to potential beneficiaries of the promise"); Mercado v. Mitchell, 83 Wis.2d 17, 264 N.W.2d 532, 534 (1978) (because city ordinance required carnival owners to carry liability insurance, member of public could sue insurance agents for alleged failure to procure sufficient insurance); cf. Walker v. Atlantic Chrysler Plymouth, Inc., 216 N.J. Super. 255, 523 A.2d 665 (App.Div. 1987) (employee of car dealership was intended beneficiary of agreement between employer and insurance broker to procure UM/UIM insurance coverage, and thus could sue the broker for breach of contract). But see Oathout v. Johnson, 88 A.D.2d 1010, 451 N.Y.S.2d 932, 933 (1982) (agreement to procure insurance was intended only to benefit the owner, not the general public under New York law).
We agree with the analysis of the Massachusetts Supreme Court in Flattery. Because of the importance of liability insurance, whether it be mandatory or optional, members of the general public are third-party beneficiaries of an agreement between a business proprietor and its insurance broker to procure *478 coverage. It can be said that the policy protects the assets of the insured; of equal importance, it is intended to provide a source of recovery for an innocent injured party who, because of the insolvency of the insured, would otherwise have no means of redress. For the foregoing reasons, we reverse and remand for further proceedings.
Reversed and remanded.
STERN, J.A.D. (concurring).
I briefly write to explain the basis for my vote and what I believe to be the limited holding based on the facts and circumstances of the case. I do not want the reader to conclude that we have expanded New Jersey law to make the insurance broker of a business entity where an accident occurred responsible for injuries whenever there is inadequate coverage.
I start by noting my concern that the majority opinion may be read to encourage direct actions by injured invitees against insurance brokers of the establishment they patronize. I emphasize that here no direct action was filed until the Aratusa filed its third party complaint alleging negligence by its broker in failing to obtain a general liability policy.[1] Hence, the direct claim by *479 plaintiffs against the broker was filed with knowledge of the Aratusa's position concerning the coverage it should have had.[2]
The majority has well stated the principle that a defendant must owe a legal "duty" to the plaintiff as a prerequisite to tort recovery. My colleagues have also well articulated the established principles regarding third party beneficiaries. I have reservations about whether an insurance broker generally has any duty to a third party business invitee and whether plaintiff can be deemed a third party beneficiary of any agreement the Aratusa had with its broker. That is particularly true where, as here, the circumstances do not involve any imputed reliance by the invitee on any statute or rule of law which requires liability coverage to protect members of the public who are injured as a result of the negligence of the business invitor or of a person with whom they have some special relationship under law. Compare, Walker v. Atlantic Chrysler Plymouth, Inc., 216 N.J. Super. 255, 523 A.2d 665 (1987) (employee beneficiary of relationship between employer and broker for purposes of asserting breach of obligation to obtain adequate coverage); Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299, 319 A.2d 786 (Law Div. 1974) (described in detail in majority opinion; passenger could assert claim against insurance agent of vehicle's owner for failure to provide adequate coverage); Mercado v. Mitchell, 83 Wis.2d 17, 264 N.W.2d 532, 537-38 (1978) (suit permitted where plaintiffs were citizens of Milwaukee which had ordinance requiring liability insurance for roller coaster ride); *480 with Oathout v. Johnson, 88 A.D.2d 1010, 451 N.Y.S.2d 932, 933 (1982) (promise to change taxi cab coverage "was only intended to benefit the insured, not the general public"; injured person's carrier has no right to recover subrogation claim where "[d]efendant owed no statutory duty, and did not assume any other duty, to the nominal plaintiff here"); Fizz v. Kurtz, Dowd & Nuss, Inc., 360 Pa.Super. 151, 519 A.2d 1037 (1987) (decedent, who was killed by tavern patron who had been drinking at tavern, not beneficiary of duty owed tavern owners by their insurers); LaBouef v. Colony Ins. Co., 486 So.2d 760 (La. Ct. App. 1986) (tort victim has no right to action against insurance broker for failing to obtain coverage for tortfeasor). Nor is there any suggestion that plaintiff knew, much less relied upon, any action or inaction of the insurance professional. See, Rosenblum v. Adler, 93 N.J. 324, 352, 461 A.2d 138 (1983) (extending protection to those who may reasonably be expected to rely on an accountant's negligent audit report of public corporation); Petrillo v. Bachenberg, 263 N.J. Super. 472, 482-87, 623 A.2d 272 (App.Div. 1993) (jury question presented as to whether plaintiff reasonably relied on conduct of seller's attorney; "attorney may owe duty to a third-party under appropriate circumstances," 263 N.J. Super. at 484, 623 A.2d 272); Walker v. Atlantic Chrysler Plymouth, supra.
By adopting the rationale of Flattery v. Gregory, 397 Mass. 143, 489 N.E.2d 1257 (1986), I believe that the majority may be understood to have significantly expanded the tort or contract law of New Jersey. While the Flattery court recognized no tort liability because the automobile liability coverage satisfied the statutory minimum limits, the Supreme Judicial Court of Massachusetts held that plaintiff was a third party beneficiary because the parties to a "contract to procure" adequate insurance "intend the injured third-party ... to benefit from their contract." 489 N.E.2d at 1262.[3] As a judge of an intermediate appellate court, I *481 do not want to be understood as having subscribed to that broad theory or to the principle that brokers are somehow responsible for assuring members of the public that their clients are adequately insured. This case involves the client's assertions that it requested and paid for coverage which was not obtained, and a broker should foresee that an injured business invitee would suffer damages (at least where the client defaults or is insolvent) in the event he or she is injured on the premises through the negligence of the broker's client when the client is not insured as required under their agreement.[4]
NOTES
[1] In addition, plaintiff George Werrmann asserted a per quod claim.
[1] The Aratusa's third party complaint provided in part:

4. In reliance upon the representations of the third party defendant, the third party plaintiff agreed to allow the third party defendant to procure liability insurance coverage on its behalf and further agreed to pay any premiums which were billed for the coverage secured by the third party defendant.
5. Consequently, third party defendant secured a policy of insurance issued by R. Bruce Hill Agency.
6. The third party plaintiff paid all premiums which became due and owing in connection with the aforementioned policy of insurance.
7. The third party defendant, through its agents, servants and employees, advised the third party plaintiff that the type and amount of insurance coverage on the premises was adequate and sufficient for the needs of the third party plaintiff.
........
10. The third party plaintiff has been advised that the coverage provided in the policy issued by R. Bruce Hill Agency will not provide coverage for the injuries sustained by Cheryl Wermann.
In a separate count the Aratusa alleged that its broker "neglected to secure said insurance."
[2] We are directed to no legal obligation of a restaurant to maintain liability insurance, and a business entity could decide not to buy insurance or a particular amount of coverage notwithstanding the advice of its broker.
[3] Flattery involved automobile insurance, but the defendant tortfeasor there had the compulsory insurance required by law, and the contract claim related to the broker's failure to "obtain optional liability coverage on the tortfeasor's motor vehicle." 489 N.E.2d at 1258. Flattery, like Walker and Eschle, involved inadequate motor vehicle coverage, and the fact of the matter is that motor vehicle drivers and passengers know that all automobiles must have some coverage.
[4] Moreover, as the majority points out, if plaintiffs had secured an assignment by settlement before the Aratusa defaulted, they could stand in the shoes of the Aratusa. There is some fairness, therefore, in permitting the case to proceed against the broker because plaintiffs have a worthless $85,000 judgment instead of an assignment they may have been able to secure had the Aratusa not defaulted.