**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2991-17T4

ESTATE OF BORO M.
ATANASOSKI, LILLIAN E.
CARTER, his wife, individually,
and as Administrator and Administrator
Ad Prosequendum of the ESTATE OF
BORO M. ATANASOSKI,

     Plaintiffs-Appellants,

v.

ARCURI AGENCY, INC., ARCURI
AGENCY, PETER M. ARCURI, JR.,
ARCHER A. ASSOCIATES, INC.,
and ROBERT LANCIOTTI,

     Defendants-Respondents,

and

MARY E. ALLEN,

     Defendant.

_____

Argued February 14, 2019 – Decided May 6, 2019

Before Judges Simonelli, O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4821-17.

Antonio D. Arthurs argued the cause for appellants (Law Offices of Jeffrey S. Hasson, PC, attorneys; Antonio D. Arthurs, on the brief).

Audrey L. Shields argued the cause for respondents Arcuri Agency, Inc., Arcuri Agency, and Peter M. Arcuri, Jr. (Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, PC, attorneys; Audrey L. Shields, of counsel and on the brief; Carolynn A. Mulder, on the brief).

Debra M. Krebs argued the cause for respondents Archer A. Associates Inc. and Robert Lanciotti (Keidel, Weldon & Cunningham, LLP, attorneys; Debra M. Krebs, on the brief).

PER CURIAM

In this insurance broker malpractice matter, plaintiffs Estate of Boro M. Atanasoski (Estate) and Lillian E. Carter[1] appeal from the January 29, 2018 Law Division orders granting the motions of defendants Arcuri Agency, Inc, Acuri Agency, Peter M. Arcuri, Jr. (collectively Arcuri), and Archer A. Associates, Inc. and Robert Lanciotti (collectively Archer), to dismiss the complaint with prejudice pursuant to Rule 4:6-2(e).  We affirm.

---

[1] We shall sometimes collectively refer to the Estate and Carter as plaintiff.

A-2991-17T4

I.

European Bread, Inc., d/b/a Schripps European Bread (Schripps) is in the bread delivery business. Arcuri procured a commercial vehicle liability insurance policy for Schripps with Allstate New Jersey Insurance Company (Allstate), which had a $1 million per accident limit. Archer procured a commercial excess and umbrella liability policy for Schripps with XL/Greenwich Insurance Company (XL) in the amount of $5 million. The XL policy did not provide excess coverage for commercial vehicle liability.

On July 26, 2014, Boro M. Atanasoski (decedent) was struck and killed by a vehicle owned by Schripps and operated by its employee, Joseph Eizaguirre. On August 20, 2014, Carter, the decedent's wife, filed a complaint individually and as administrator ad prosequendum of the Estate against Schripps and Eizaguirre for wrongful death and survivorship.

On July 18, 2017, plaintiff filed a second complaint to include professional negligence claims against Arcuri and Archer.[2] Plaintiff alleged that Arcuri failed to advise Schripps of the need for higher primary policy limits and/or excess insurance above the $1 million Arcuri procured with Allstate.

---

[2] Prior thereto, on July 5, 2016, Schripps filed a complaint against Archer for insurance broker malpractice, and, thereafter, Archer filed a third-party complaint against Arcuri for contribution and negligence.

Plaintiff alleged that Archer procured a policy that specifically excluded commercial vehicle liability coverage or any claims arising from the use of a motor vehicle despite the fact that Schripps' bread delivery business involved the substantial use of commercial vehicles. The court severed these claims, dismissing the claims against Arcuri and Archer without prejudice and allowing the underlying action to proceed against Schripps and Eizaguirre. The court permitted plaintiff to proceed against the brokers under a separate docket number.

The underlying action settled for $940,000, paid by Allstate. Pursuant to a settlement agreement dated July 25, 2017, plaintiff released Schripps and Eizaguirre from any further claims and specifically agreed not to seek any contribution from them beyond the settlement amount. The settlement agreement contained "[c]ooperation with [c]ontinued [l]itigation," which required Schripps and Eizaguirre "to cooperate with the ongoing litigation, in pursuing claims against the insurance agents or brokers . . . and by providing documents and testifying at deposition or trial." Notably, the parties agreed that the settlement "shall not be construed as an admission of liability on the part of any party to this [a]greement." The settlement was not reduced to a judgment. The court thereafter dismissed the underlying action with prejudice.

A-2991-17T4

On July 18, 2017, immediately prior to the execution of the settlement agreement, plaintiff filed a new complaint asserting insurance broker malpractice claims against Arcuri and Archer. Plaintiff did not join Schripps and Eizaguirre as defendants. Thereafter, Arcuri and Archer each filed a motion to dismiss pursuant to Rule 4:6-2(e).

In granting the motions, the motion judge cited Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182 (1994), Werrmann v. Aratusa, Ltd., 266 N.J. Super. 471 (App. Div. 1993), Manukas v. Am. Ins. Co., 98 N.J. Super. 522 (App. Div. 1968), and Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299 (Law Div. 1974), and determined there must be a judgment against the underlying tortfeasors in order to determine if plaintiff's claim was worth in excess of the available $1 million primary Allstate coverage. The judge found there could be no judgment in this case against Schripps and Eizaguirre because plaintiff did not name them as defendants in this matter and settled her claims against them, relinquishing her right to sue them. The judge concluded:

> Only if such . . . judgment is rendered can the [c]ourt determine if Schripps/Eizaguirre sustained a loss. Plaintiff's subjective belief that her claim exceeds $1[million] is not sufficient. A jury may not believe plaintiff's proffered damage experts as to the value of the alleged loss suffered by the [p]laintiff.
>
> [(Citation omitted).]

A-2991-17T4

The judge next distinguished <u>Deblon v. Beaton</u>, 103 N.J. Super. 345 (Law. Div. 1968), on which plaintiff relied, noting that Schripps and Eizaguirre had no obligation to help defend any valuation trial, but rather, were obligated to help plaintiff pursue her claims against the brokers. The court further noted that Schripps did not request more than $1 million in commercial auto liability coverage and Arcuri had no duty to procure more than the amount requested.

Regarding Archer, the judge found that even if the XL policy applied to Schripps's commercial vehicles, the excess coverage under the policy would not have been exposed because plaintiff settled within Allstate's primary policy for $1 million. The judge concluded that even if Archer was negligent in not procuring commercial auto liability excess coverage, this caused no damage or financial loss to Schripps related to plaintiff's wrongful death/survivorship claims.

On appeal, plaintiff contends the judge erred in dismissing this matter with prejudice because she asserted a valid cause of action against Arcuri and Archer. Relying primarily on <u>Werrmann</u> and <u>Deblon</u>, plaintiff argues the brokers owed a duty to third parties and she presented facts establishing a breach of duty,

6

proximate causation, and damages. Plaintiff did not address <u>Manukas</u> and <u>Eschle</u>.[3]

Our review of a dismissal for failure to state a claim pursuant to <u>Rule</u> 4:6-2(e) is de novo, following the same standard as the trial court. <u>Smerling v. Harrah's Entm't, Inc.</u>, 389 N.J. Super. 181, 186 (App Div. 2006). Like the trial court, we must search the complaint "in depth and with liberality to determine if there is any 'cause of action [] "suggested" by the facts.'" <u>State v. Cherry Hill Mitsubishi</u>, 439 N.J. Super. 462, 467 (App. Div. 2015) (alteration in original) (quoting <u>Printing-Mart Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989)). The inquiry is limited to "examining the legal sufficiency of the facts alleged on the face of the complaint." <u>Ibid.</u> (quoting <u>Printing-Mart Morristown</u>, 116 N.J. at 746). "Dismissal is the appropriate remedy where the pleading does not establish a colorable claim and discovery would not develop one" <u>Ibid.</u> Applying these standards, we discern no reason to reverse.

An insurance broker owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker. <u>Carter Lincoln-Mercury</u>,

---

[3] Although <u>Eschle</u> is a trial court opinion that is not binding on us, <u>S & R Assocs. v. Lynn Realty</u>, 338 N.J. Super. 350, 355 (App. Div. 2001), our Supreme Court cited it with approval in <u>Carter-Lincoln Mercury</u>, 135 N.J. at 189, as did this court in several published opinions, including <u>Werrmann</u>, 266 N.J. Super. at 474.

135 N.J. at 189. An insured can establish a prima facie case of negligence against an insurance broker if: (1) the broker neglects to procure the insurance; (2) the broker secures a policy that is either void or materially deficient; or (3) the policy does not provide the coverage the broker undertook to supply. President v. Jenkins, 180 N.J. 550, 569 (2004). However, "an insurance agent ha[s] no duty to advise an insured to consider higher amounts of . . . insurance." Carter Lincoln-Mercury, 135 N.J. at 190. "To succeed in an action against an insurance broker, the plaintiff must prove that in addition to being negligent, the broker's negligence was a proximate cause of the loss." Harbor Commuter Serv., Inc. v. Frenkel & Co., 401 N.J. Super. 354, 368 (App. Div. 2008). The plaintiff must also prove damages. Robinson v. Janay, 105 N.J. Super. 585, 591 (App. Div. 1969).

Members of the general public who are injured as a result of an insured's negligence may bring a direct action against the insured's insurance broker for negligence. Werrmann, 266 N.J. Super. at 474. That extension

> does little more than synthesize two established rules in New Jersey law. First, that an insurance agent is liable to the potential insured for the failure to obtain such coverage, and second, that an injured party acquires an interest in an insurance policy which may be available to cover the accident. If the agent stands in the shoes of the company which would have issued the policy (had he not been negligent or breached his contract),

A-2991-17T4

> there is no reason to deny the direct action against him, combining these two lines of cases. To hold to the contrary would be to insulate the agent from the consequences of his acts, and leave the public without adequate protection.
>
> [Id. at 475 (quoting Eschle, 128 N.J. Super. at 306).]

However, it is foundational that "an injured person possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment against the latter . . . ." Manukas, 98 N.J. Super. at 524; see also Kabinski v. Emp'rs' Liab. Assur. Corp., 123 N.J.L. 377, 379 (1939) ("injured parties have no rights under the policy until there is an unsatisfied judgment against the assured"). An injured person may not proceed directly against the underlying tortfeasor's insurer

> until [the injured person] first establishes the [underlying tortfeasor's] negligence and the quantum of damages in an action against the [underlying tortfeasor] or to which the [underlying tortfeasor] is a party. Plaintiff could have included a declaratory judgment action against [the insurer] in the action against the [underlying tortfeasor] or instituted a separate declaratory judgment action joining the [underlying tortfeasor] as a party, but [the injured person] cannot maintain the present action [against the insurer].
>
> [Manukas, 98 N.J. Super. at 525 (emphasis added).]

This principal applies equally to claims against an insurance agent or broker. See Eschle, 128 N.J. Super. at 306 (holding that "defendant insurance agent will

not be liable unless it is first shown that the claim has been proven against the [underlying tortfeasor] and also that the policy obtained did not afford the requested coverage").

Plaintiff essentially argues that Arcuri and Archer owed a duty to her as an injured member of the public and breached that duty by not obtaining appropriate coverage or advising Schripps of the need for excess commercial vehicle liability coverage, leaving her with inadequate protection for the damages resulting from the fatal accident. Plaintiff posits she had standing to bring a direct action against the brokers absent both a judgment against the underlying tortfeasors and proof of a sufficient quantum of damages, and the settlement was not a waiver of her right to bring a direct action. These arguments, however, are based on plaintiff's misinterpretation of case law and failure to recognize critical distinctions.

For example, plaintiff relies on Werrmann for the principle that an injured plaintiff is permitted to sustain a direct negligence action against the broker, asserting the broker owed her a duty, and breached that duty. Werrmann, 266 N.J. Super. at 476. However, plaintiff ignores the fact that the direct action against the broker, which the trial court dismissed, was reinstated on appeal after the plaintiff obtained a default judgment in the amount of $85,000 against the

underlying tortfeasor. Id. at 473. Thus, the default judgment she obtained against the underlying tortfeasor was proof of the underlying tortfeasor's negligence. We found that "after obtaining judgment against [the underlying tortfeasor], plaintiff could have obtained an assignment from [the underlying tortfeasor] of [the underlying tortfeasor's] broker's-negligence claim against [the broker], and pursued that claim as an assignee." Id. at 476.

Moreover, the plaintiff in Werrmann alleged the broker was negligent in failing to renew the underlying tortfeasor's general liability policy. Id. at 473. Because there was no insurance policy and thus, no available coverage, the damages the judgment established were necessarily greater than the available coverage, thus proving the quantum of damages. Ibid. We never suggested that the plaintiff could proceed with a direct action against the broker without first proving the underlying tortfeasor's negligence and that the damages exceeded the available insurance coverage. Nor does Werrmann support plaintiff's attempt to establish those foundational proofs by asserting the negligence of the non-party underlying tortfeasors in this action.[4]

---

[4] "Judgment or orders normally do not bind non-parties." N. Haledon Fire Co. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 628 (App. Div. 2012) (quoting In re Application of Mallon, 232 N.J. Super. 249, 254 n.2 (App. Div. 1989)). This action does not come within any of the limited exceptions to that principal.

Our holding in Werrmann is rooted in the trial court's holding in Eschle that a person injured in a motor vehicle accident may bring a direct action against the insurance agent or broker. Id. at 474-75 (citing Eschle, 128 N.J. Super. at 306). However, the Eschle explicitlt stated that there must be a trial where claims are brought against the alleged tortfeasor and insurance broker in the same action, stating "it should be no problem for the court to insure that defendant insurance agent will not be liable unless it is first shown that the claim has been proven against the [underlying tortfeasor] and also that the policy obtained did not afford the requested coverage." Eschle, 128 N.J. Super. at 306.

Here, the settlement agreement confirms that Schripps and Eizaguirre never admitted liability, and there was no judgment entered against them. Thus, plaintiff failed to establish the underlying tortfeasors' negligence and the quantum of damages in the underlying action. Schriffs's bare assertion that Arcuri and Archer were negligent in failing to obtain adequate commercial vehicle liability primary and excess coverage for it is insufficient to overcome these deficiencies. Without a judgment against the underlying tortfeasors establishing their negligence and the quantum of damages, plaintiff cannot

See Morris Cty. Fair Hous. Council v. Boonton Twp., 197 N.J. Super. 359, 364-65 (Law Div. 1984).

pursue a direct action against Arcuri and Archer. Manukas, 98 N.J. Super. at 524.

Plaintiff's reliance on Deblon is also misplaced. There, the widow of a man killed in an automobile accident brought a direct action against the driver's automobile insurance carrier, Jersey Insurance Company of New York of the Pacific of New York Group (Jersey), notwithstanding a settlement agreement between the plaintiff, the driver, the vehicle owner, and the owner's insurance carrier, Allstate.[5] Deblon, 103 N.J. Super. at 347. However, unlike here, the settlement agreement in Deblon did not release the owner and driver from all liability; it released then only to the extent of their personal assets and their Allstate insurance coverage. Id. at 439. The plaintiff expressly reserved the right to proceed against Jersey and the owner and driver as named insureds under the Jersey policy, and named the owner and driver as defendants in the plaintiff's lawsuit against Jersey, thus exposing them to a judgment beyond the Allstate coverage. Id. at 347-48. The court determined that a jury verdict of negligence against the underlying tortfeasors and damages in excess of the primary coverage was required in order to proceed against Jersey. Id. at 351.

---

[5] The owner's Allstate policy provided insurance in the amount of $50,000 and the driver's Jersey policy provided insurance in the amount of $10,000. The matter settled within the Allstate policy limits for $46,500. Id. at 347.

A-2991-17T4

Even setting aside the fact that <u>Deblon</u> was an action against an insurance carrier and not an insurance broker, there are other distinguishing facts. For example, the court based its decision, in part, on Jersey's ability to rely on the cooperation clause in its insurance policy to compel the owner and driver to vigorously defend against the plaintiff's action. <u>Id.</u> at 352. Jersey had argued that public policy militated against permitting a plaintiff to settle with the tortfeasors and primary insurance carrier without releasing the excess carrier, because same would encourage collusion between claimants and insureds. <u>Ibid.</u> The settlement agreement here contains a cooperation clause, which requires Schripps and Eizaguirre to assist plaintiff in prosecuting her lawsuit against the brokers. Thus, the collusion protected against in <u>Deblon</u> is actualized here.

Regarding the claim against Archer, there are additional grounds distinguishing <u>Deblon</u>. Although the plaintiff in <u>Deblon</u> received less than the maximum available from the primary polict under the settlement agreement, she was nevertheless able to proceed against Jersey because its policy was not a true "excess" policy. <u>Id.</u> at 347-48. Rather, the policy was a primary policy that became "excess insurance" because it contained an "other insurance" clause. <u>Ibid.</u>; <u>see also</u> <u>CNA Ins. Co. v. Selective Ins. Co.</u>, 354 N.J. Super. 369, 379-81 (App. Div. 2002) (explaining the difference "between a primary insurance policy

containing an excess 'other insurance' clause, and a true excess policy"). Thus, settling below the maximum available under the Allstate policy did not preclude the plaintiff's direct claim against Jersey.

There was only one primary policy in this case, the Allstate policy. Even if Archer had procured excess commercial vehicle liability coverage, that coverage would be triggered only upon exhaustion of the primary Allstate coverage. Because the matter settled within the primary policy limits, plaintiff had no claim against Archer or XL.

The notion that a plaintiff could directly sue and recover from an insurer or insurance broker without first demonstrating the insured's negligence and quantum of damages would, as feared by Jersey in <u>Deblon</u>, create legal circumstances ripe for abuse. As plaintiff here has not received and cannot receive a judgment against Schripps and Eizaguirre, and has not demonstrated and cannot demonstrate their negligence and a quantum of damages, plaintiff has no right to bring a direct action against Arcuri and Archer.

We find no merit in plaintiff's third-party beneficiary argument. "To determine whether a person qualifies as a third-party beneficiary, the test is 'whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts . . . .'" <u>Werrmann</u>, 266 N.J. Super.

at 476 (quoting <u>Rieder Cmtys., Inc. v. N. Brunswick Twp.</u>, 227 N.J. Super. 214, 222 (App. Div. 1988)).

In <u>Werrmann</u>, 266 N.J. Super. at 476, we observed that in addition to a theory based on duty, a plaintiff could similarly proceed against the insurance broker under the theory that the injured party was a third-party beneficiary of the broker's agreement, with the insured to procure insurance. However, unlike here, the plaintiff in <u>Werrmann</u> was awarded beneficiary status because she possessed an outstanding default judgment against the underlying tortfeasor and, further, the underlying tortfeasor was insolvent. <u>Id.</u> at 475-76. As such, the plaintiff was left without any recompense. <u>Ibid.</u> We recognized that "the policy protects the assets of the insured; of equal importance, it is intended to provide a source of recovery for an innocent injured party who, because of the insolvency of the insured, would otherwise have no means of redress." <u>Id.</u> at 478. Thus, we permitted a direct action by the plaintiff against the allegedly negligent insurance broker.

Then-Judge Stern, in his concurring opinion, expressly intended future readers to recognize "what [he] believe[d] to be the limited holding based on the facts and circumstances of the case. [He] d[id] not want the reader to conclude [this court] ha[d] expanded New Jersey law to make the insurance broker of a

16

business entity where an accident occurred responsible for injuries whenever there is inadequate coverage." Id. at 478 (Stern, J., concurring).

For example, in Walker v. Atlantic Chrysler Plymouth, Inc., 216 N.J. Super. 255, 261-62 (App. Div. 1987), we granted third-party beneficiary status to an employee that was an intended beneficiary of his employer's automobile insurance policy. In distinguishing other case law, we stated "[w]e are not dealing with a situation where there is no relationship or privity between the insured and the injured party seeking to recover. Plaintiff . . . was an employee and an obvious intended beneficiary of the insurance coverage." Id. at 261-62.

In Carter Lincoln-Mercury, 135 N.J. at 187, the plaintiff was deemed a third-party beneficiary because it was a loss-payee designated by a specific endorsement on the insurance policy procured by the broker. Id. at 187. Further, the plaintiff possessed a default judgment against the insured. Id. at 188.

Unlike in Walker and in Carter Lincoln-Mercury, plaintiff is not an intended beneficiary of either insurance policy. She, thus, lacks standing to assert a direct claim against Arcuri and Archer as a third-party beneficiary. Further, as recognized in Hanover Ins. Co., plaintiff has not been left without redress, and therefore the public policy concern that guided the decision in Werrmann is not present here.

Simply put, plaintiff has failed to substantiate any claim that she should be afforded third-party beneficiary status sufficient to bring a direct claim against either Arcuri or Archer. Plaintiff is not able to use the holding in Werrmann, unique to the facts of that case, to circumvent the settlement of the underlying claims.

We briefly address plaintiff's argument that the judge erred in dismissing her breach of contract claim. Plaintiff has insufficiently alleged a breach of contract claim; she did not demonstrate the existence of a valid contract, that the non-breaching party adequately performed under the contract, and that defendants' breach caused a loss. See Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). Ignoring for a moment that plaintiff has not demonstrated and cannot demonstrate that Schripps suffered a loss as a result of Archer's alleged breach of the alleged contract, or that Arcuri failed to provide the requested level of coverage, plaintiff has still failed to plead with specificity the existence of any contract.

In fact, the only time plaintiff even mentions the existence of a contract between Arcuri and Schripps and Archer and Schripps are in count six and count seven of the complaint, where she states that the broker defendants are "liable to [p]laintiffs as they . . . breached contract with [Schripps]." Plaintiff has failed

to allege even "the basic elements of a contract – offer, acceptance, and consideration . . . [,]" to substantiate the existence of any contract. Smith v. SBC Commc'ns Inc., 178 N.J. 265, 283 (2004).

As such, dismissal of plaintiff's breach of contract claim with prejudice was warranted. The complaint has simply not pled facts that even suggest the existence of a contract, let alone a breach of contract claim. See Printing Mart-Morristown, 116 N.J. at 746.

Lastly, plaintiff argues that the order severing the claims with leave to refile against Arcuri and Archer under a separate docket number conferred standing on her to pursue direct claims against the brokers. In making this argument, plaintiff merely reiterates her contention that she does not need to possess a judgment of negligence and a sufficient quantum of damages to proceed against the brokers. She provides no authority that supports or lends any credence to this misguided premise.

However, at oral argument on the motions to dismiss, plaintiff's counsel admitted that in granting severance, the judge did not rule on the merits of the claims against the brokers. In fact, per Archer's counsel, the judge "very strenuously questioned [plaintiff's] standing to bring a claim against the brokers[,]" "refused to rule on it[,]" and ultimately "decided to sever it." The

severance order thus cannot be viewed as an endorsement of plaintiff's claims against the brokers, merely because the order included the phrase "and shall proceed under a separate docket number." The fact is that plaintiff could have proceeded against the brokers in a distinct action, had she not settled the claims against the underlying tortfeasors in the manner that she did.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2991-17T4