## IN THE MATTER OF THE ESTATE OF NORMAN HENRY GARDINIER, DECEASED.

Argued March 19, 1963—Decided June 3, 1963.

*Mr. Robert C. Gruhin* argued the cause for appellant Nicholas Torsiello.

*Mr. Donald L. Berlin* argued the cause for respondent Clyde Gardinier (*Messrs. Stevenson & Willette,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J.   On September 10, 1957 an automobile driven by Nicholas Torsiello collided with an automobile driven by Norman Henry Gardinier.   The accident occurred in Belleville, New Jersey, where both Torsiello and Gardinier lived.   In November 1957 Gardinier moved to New York where he died in November 1958.   Torsiello as a creditor applied in our State for the issuance of letters of administration, and after the letters were granted, he had process in his suit for damages served upon the administrator.   The administrator sent the papers to Gardinier's insurance carrier, which thereupon had Gardinier's son move to vacate the grant of the letters.   The county court denied the motion.   However, the Appellate Division reversed, 74 *N. J. Super.* 217 (1962), and we granted certification, 38 *N. J.* 317 (1962).

The complaint for the issuance of the letters alleged that Gardinier died a resident of New Jersey.   Torsiello insists

the showing he made raised a triable issue as to whether the deceased in fact had accomplished a change of domicile. We need not consider that question since, if deceased died a nonresident, still there was property here which supported letters under *N. J. S.* 3A:6–10 upon the application of a creditor or claimant:

"If an executor or administrator of a nonresident decedent fails to apply in this state for letters testamentary or of administration within 60 days next after the death of the decedent and there is, real property, *choses in action or other personal property of the decedent within this state*, or the evidence of choses in action in the hands of a resident of this state, the surrogate's court of a county wherein any such real property, choses in action or evidences thereof or other personal property, is situate, or the superior court, may, in an action by any person resident or non resident, alleging himself to have a debt or legal claim against the decedent which by the law of this state survives against his representatives, issue letters of administration, with the will annexed or otherwise as the case may require, to some fit person to be designated by the court.

Prior to an appointment pursuant to this section such notice shall be given the foreign executor or administrator as the court shall prescribe." (Emphasis added)

"Personal property" is defined in *N. J. S. A.* 1:1–2:

" 'Personal property' includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrances upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership."

The property to which we refer is the policy of automobile liability insurance, and more specifically, the right thereunder of the deceased and his estate to have the insurer defend and pay within the policy limits any judgment in a suit by Torsiello.

The Appellate Division deemed the case to be controlled by *In re Roche,* 16 *N. J.* 579 (1954). There both the deceased and the injured claimant who sought administration were

residents of New York. The policy of insurance was issued in that state. The accident, however, occurred in New Jersey and the carrier was authorized to do business in New Jersey. In these circumstances it was held by a vote of 4 to 3 that the statute quoted above did not authorize the issuance of letters of administration.

The precise basis for the majority holding in *Roche* seems not too clear. We assume there was no disagreement with the generally accepted proposition that the deceased insured's right of exoneration under the policy constitutes an asset sufficient to support administration somewhere. Annot., 67 *A. L. R. 2d* 936 (1959). Rather we read the majority opinion to find that that asset did not warrant administration in New Jersey, and apparently for three reasons to which we will now refer.

One reason was that "in all seeming the situs of the insurance policy is the domicil of the nonresident decedent at the time of his death" (16 *N. J.*, at *p.* 586). With that proposition we must disagree. Situs, which of course is fictional in the case of ordinary intangibles, depends upon what is involved. For the purpose of administration, a sufficient situs must be found at a place where the debtor or obligor can be reached to the end that the asset may be gathered and administered. Thus the *Restatement, Conflict of Laws* (1934), in dealing with administration of the estate of a decedent, states in comment *"e"* to section 467, that "A claim is an asset within a state if there is jurisdiction over the person or property of the one against whom the claim is asserted." See 6 *N. J. Practice (Clapp, Wills and Administration)* § 719, *p.* 301 (3*d ed.* 1962).

▇▇▇ The majority opinion in *Roche* sums up another reason in the following words (16 *N. J.*, at *p.* 585) :

"* * * The liability insurance policy, in its very nature, provided no reason for ancillary administration in New Jersey. There was no judgment to be satisfied under its terms ; indeed, action had not been commenced. The policy does not have a situs in New Jersey. It was issued by a foreign corporation in New York to a resident of

New York; and, while the indemnity company was and is authorized to transact its business in New Jersey, the policy was not delivered in the exercise of that power, and New Jersey has no interest in its enforcement which confers jurisdiction through ancillary administration to determine the underlying issue of liability in tort as between the nonresident insured and the nonresident injured third persons."

The thought is that New Jersey did not have sufficient interest to entertain the quarrel. If that were the sole basis of decision, the present case would plainly be different. Here the State of New Jersey is the State with the greatest concern, since the accident occurred here, both of the motorists lived here, and the policy of insurance was sold here with the expectation that it would be performed here. Moreover the issuance of the policy was not a wholly private matter between the insurer and the deceased, for our Legislature almost 40 years ago expressed its interest in the subject by providing for an action by the victim upon the policy after judgment against the insured. *R. S.* 17:28–2. Accordingly, upon the happening of an accident the injured third party acquires an interest in the policy that cannot be foreclosed by litigation or agreement between insurer and insured alone. *Dransfield v. Citizens Casualty Co.,* 5 *N. J.* 190 (1950) ; *Century Indemnity Co. v. Norbut,* 117 *N. J. Eq.* 584 (*Ch.* 1935), affirmed o. b. 120 *N. J. Eq.* 337 (*E. & A.* 1936). These circumstances suggest that New Jersey is an appropriate forum in which to litigate the deceased's liability.

Finally the majority in *Roche* said the quest for letters of administration was in reality but a device to obtain service of process in the negligence case "in utter disregard of the statutory policy excluding nonresident estates from liability to substituted service in such circumstances" (16 *N. J.,* at *p.* 588). The majority there referred to the circumstance that under *N. J. S. A.* 39:7–2, as it then read, process could not be served upon the personal representative of a nonresident motorist by service upon the Director of Motor Vehicles albeit service could thus have been made upon the motorist had he lived. In the present case the Appellate Division recurred to

that thought when it stressed that the Legislature, although it authorized such substituted service upon a motorist who ceased to be resident after the accident, *N. J. S. A.* 39 :7–2.1, did not authorize such service upon his personal representative.

The difficulty with that argument lies in the unwarranted assumption that in failing to provide for substituted service the Legislature affirmatively decided that the negligence case shuold not be tried here and hence, to satisfy that legislative decision, a statute relating to the administration of estates must be curtailed accordingly. It is dangerous business to find legislative intent in legislative silence. The Legislature may fail to speak for many reasons, of which one may be that the particular problem was not in mind.

Here the statute providing for substituted service first dealt only with the nonresident motorist. *N. J. S. A.* 39 :7–2. In 1954 the Legislature, taking cognizance of the situation in which the motorist was resident at the time of the accident but moved from the State before process was served, authorized substituted service in that situation. *N. J. S. A.* 39 :7–2.1. *Roche* was decided later that year, revealing the problem of reaching the estate of a deceased motorist. It was not until 1958 that the Legislature dealt with the problem of substituted service in such circumstances. In that year it amended *N. J. S. A.* 39 :7–2 to authorize substituted service upon the personal representative of the *nonresident* motorist. Thus, of course, the holding of *Roche* became academic, at least in situations in which a personal representative is appointed elsewhere for the nonresident, since the claimant can effect substituted service in his negligence action. But the Legislature did not amend *N. J. S. A.* 39 :7–2.1 to provide for substituted service upon the personal representative of the *resident* motorist who became nonresident after the accident and thereafter died. It is that omission which, under the approach of *Roche,* would bespeak the positive policy decision by the Legislature to which we have referred. Yet neither counsel nor we can imagine any reason why the Legislature would want to distinguish between suits against the estates

of nonresidents upon the irrelevant fact that one deceased was a resident at the time of the mishap while the other was not. In these circumstances we think it quite unrealistic to infer a legislative decision from a mere failure to act and thereupon to find an intent to restrain the statute relating to administration of estates.

In summary, we are unable to agree with the majority in *Roche*. As we have pointed out, the facts of the present case differ from the facts stressed in *Roche*, and hence that case could be distinguished. But the distinction would be strained since other grounds of decision in *Roche* would nonetheless require a denial of administration in the present case. Indeed, part of the reasoning of *Roche* would absolutely bar administration on the basis of the policy of insurance except at the domicile of the insured. Hence we must face the question whether *Roche* should be followed. We think it should not, for the reasons we have given. We add that the decided weight of authority elsewhere holds the policy of insurance will support letters of administration as to a nonresident in a state in which the carrier is authorized to do business.[1]

---

[1] *Campbell v. Davis, Ala.*, 145 *So.* 2d 725 (*Sup. Ct.* 1962); *Tweed v. Houghton*, 103 *Ga. App.* 57, 118 *S. E.* 2d 496, 135 *A. L. R.* 558 (*Ct. App.* 1961); *Furst v. Brady*, 375 *Ill.* 425, 31 *N. E.* 2d 606 (*Sup. Ct.* 1940); *In re Lawson's Estate*, 18 *Ill. App.* 2d 586, 153 *N. E.* 2d 87 (*D. Ct. App.* 1958); *In re Fagin's Estate*, 246 *Iowa* 496, 66 *N. W.* 2d 920 (*Sup. Ct.* 1954); *Liberty v. Kinney*, 242 *Iowa* 656, 47 *N. W.* 2d 835 (*Sup. Ct.* 1951); *Gordon v. Shea*, 300 *Mass.* 95, 14 *N. E.* 2d 105 (*Sup. Ct.* 1938); *In re Kresovich's Estate*, 168 *Neb.* 673, 97 *N. W.* 2d 239 (*Sup. Ct.* 1959); *Power v. Plummer*, 93 *N. H.* 37, 35 *A.* 2d 230 (*Sup. Ct.* 1943); *Robinson v. Dana's Estate*, 87 *N. H.* 114, 174 *A.* 772, 94 *A. L. R.* 1437 (*Sup. Ct.* 1934); *Kimbell v. Smith*, 64 *N. M.* 374, 328 *P.* 2d 942 (*Sup. Ct.* 1958); *Miller v. Stiff*, 62 *N. M.* 383, 310 *P.* 2d 1039 (*Sup. Ct.* 1957); *In re Riggle's Estate*, 11 *N. Y.* 2d 73, 226 *N. Y. S.* 2d 416, 181 *N. E.* 2d 436 (*Ct. App.* 1962); *In re Vilas' Estate*, 166 *Ore.* 115, 110 *P.* 2d 940 (*Sup. Ct.* 1941); *Davis v. Cayton*, 214 *S. W.* 2d 801 (*Tex. Civ. App.* 1948); *In re Breese's Estate*, 51 *Wash.* 2d 302, 317 *P.* 2d 1055 (*Sup. Ct.* 1957); see *In re Klipple's Estate*, 101 *So.* 2d 924, 67 *A. L. R.* 2d 932 (*Fla. D. Ct. App.* 1958); *In re Leigh's Estate*, 6 *Utah* 2d 299, 313 *P.* 2d 455 (*Sup. Ct.* 1957). *Contra: Wheat v. Fidelity & Cas.*

■ This does not mean that we must entertain a controversy which plainly belongs elsewhere, merely because of the solitary circumstance that the carrier is subject to process in New Jersey and hence its policy obligation constitutes an asset within the meaning of *N. J. S.* 3A:6–10. That statute provides that letters of administration "may" issue, which may be contrasted with "shall" in *N. J. S.* 3A:6–9, the section relating to an application for letters by one other than a creditor of a nonresident intestate. As noted in the dissent in *Roche* (16 *N. J.*, at *p.* 596), *N. J. S.* 3A:6–10 was held to be "permissive" in *In re Sauer,* 133 *N. J. Eq.* 548, 549 (*Prerog.* 1943). In any event, if it be oppressive or unfair to maintain litigation in our State, relief can be had in the tort action under the flexible doctrine of *forum non conveniens. Gore v. United States Steel Corp.,* 15 *N. J.* 301 (1954); *Starr v. Berry,* 25 *N. J.* 573 (1958).

The judgment of the Appellate Division is therefore reversed and the judgment of the county court is affirmed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.

---

Co., 128 *Colo.* 236, 261 *P.* 2d 493 (*Sup. Ct.* 1953); *In re Rogers' Estate,* 164 *Kan.* 492, 190 *P.* 2d 857 (*Sup. Ct.* 1948); *In re Wilcox' Estate,* 60 *Ohio Op.* 232, 137 *N. E.* 2d 301 (*Ct. App.* 1955); *Hendrix v. Rossiter,* 155 *F. Supp.* 44 (*S. D. Ga.* 1957); *cf. Feil v. Dice,* 135 *F. Supp.* 851 (*S. D. Idaho* 1955). In all the cases here cited to support the text, except *In re Riggle's Estate,* the State which granted administration was the place of accident and in most cases it was also the place of residence of the claimant.