114 N.J. Super. 168 (1971)
275 A.2d 454
ROBERT L. CLIFFORD, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CONCORD INSURANCE COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 15, 1971.
*169 Mr. James J. Sheeran, for plaintiff.
Messrs. Theodore A. Winard, Deputy Attorney General, Jerome C. Eisenberg, for defendant.
HERBERT, J.S.C.
Plaintiff brought this action under N.J.S.A. 17:30-1 "for an order granting him possession of the property and business of" defendant. The statute goes on to provide that the Commissioner "retain possession until the company resumes business or its affairs are finally liquidated as hereinafter provided." An order granting possession was signed June 12, 1970.
Chapter 30 of Title 17 says little in a direct way about the principles to be applied and procedures to be followed *170 in liquidating or rehabilitating an insurance company placed in the Commissioner's charge. However, there is a provision (N.J.S.A. 17:30-2) that:
Upon taking possession of an insurance company, the same procedure shall be followed, so far as may be, as in the case of banks and trust companies of which the commissioner takes possession for similar causes * * *.
The same section from which this language is taken also provides:
The company may, with the consent of the commissioner, resume business at any time after the taking of possession upon conditions approved by him.
The powers of the commissioner to take possession of and administer the affairs of banks are to be found in N.J.S.A. 17:9A-266 et seq.
Defendant Concord Insurance Company has moved for an order (a) restraining the plaintiff from putting into effect a decision to liquidate the defendant, and (b) authorizing the plaintiff to proceed with a plan for liquidation of defendant in conjunction with the creation of a new insurance company which would assume certain liabilities of defendant and take over certain of its assets. The argument on the motion centered about an opinion given by the Attorney General to the Commissioner to the effect that the Commissioner has no legal power to approve of the proposed plan because that plan would involve the use of moneys from the "Motor Vehicle Liability Security Fund" created pursuant to N.J.S.A. 39:6-92 et seq.
I can only refer in a general way to the advice given by the Attorney General to the Commissioner. I have not seen the Attorney General's opinion. He takes the position that until an opinion has been approved for publication it is confidential material. Whether that position is sound in this context or not, it was made clear at the oral argument that *171 the Attorney General has advised the Commissioner against approval of the plan by reason of the fact that it would, if carried out, leave claims against defendant Concord unpaid which claims would then be payable out of the Motor Vehicle Liability Security Fund (N.J.S.A. 39:6-100).
It has been argued for Concord that the existence of the Motor Vehicle Liability Security Fund and the possibility of claims being asserted against it should not put the Commissioner in a rigid position where his only choices are complete liquidation on the one hand (which may, of course, throw more or less heavy liabilities upon the Fund) or a rehabilitation which will pay all claims in full or provide adequate security outside of the Fund for their ultimate payment. I doubt that Title 17, Chapter 30; Title 17, Chapter 9A and Title 39, Chapter 6 when read together should be construed to limit the Commissioner's power so strictly. I can conceive of situations in which he would need more flexibility if he is to use sensible business judgment. However, my conclusion is that the defendant's motion must be denied and my reasons for this are to be found in Chapters 9A and 30 of Title 17. Before stating those reasons it is desirable to describe the plan submitted to the Commissioner, and on which plaintiff's motion is based.
The plan is outlined in a letter dated December 17, 1970 which is part of the moving papers and attached to the affidavit of Mr. Arthur D. Lerner as Exhibit D-3. In its principal aspects the plan contemplates formation of a new insurance company with paid-in capital and surplus of not less than $600,000; assumption by the new company of defendant's liability to pay to its policyholders claims for damages to their own automobiles and the like (called first-party claims); assumption by the new company of all defendant's liabilities on its total unearned premium liability reserve on December 31, 1970; assumption by the new company of liability for commissions payable; transfer to the new company of assets of the defendant which are described *172 in the letter of December 17, 1970 as capital stock of Lenox Finance Company, agents' balances, marketable securities and negotiable bonds, all of these having a total value of $1,016,000.
Claims which arose prior to December 31, 1970 against defendant's policyholders are not provided for by the plan. Presumably some of those claims have already been reduced to judgment, others are in suit and others are not yet in litigation. Whether a claim of this type is asserted by a present or former policyholder of defendant under the terms of his policy or by a plaintiff who has recovered a judgment, still unpaid, against a policyholder who caused that plaintiff injury by the negligent operation of an insured automobile seems unimportant for present purposes. The injured party who has a claim against an insured motorist also has an interest in the motorist's policy. N.J.S.A. 17:28-2; In re Estate of Gardinier, 40 N.J. 261, 265 (1963). Being unprovided for by the plan, the claims in this class would become payable out of the Motor Vehicle Liability Security Fund, but that would be an incidental effect, and if approval of the plan could be otherwise supported, would be no more objectionable in my view than the burden thrown upon the Fund by a full liquidation so disappointing in its outcome that only a small dividend, or no dividend at all, could be paid.
My basis for denying the motion is the absence of anything in Chapter 9A and 30 of Title 17 to empower the Commissioner to scale down claims, fail to provide for any claim or group of claims or otherwise do anything, short of full liquidation, except to approve of a rehabilitation plan which will provide for payment of all claims in full or in a percentage to which all claimants have agreed. In short, Chapters 9A and 30 are not like the modern Federal Bankruptcy Act which lays down conditions for requiring a nonassenting creditor to accept less than the full amount of his claim, or less than immediate payment, even though the debtor corporation reorganizes.
*173 Liquidation should not have to mean a public auction sale. A private offer to acquire assets of an insurance company in the charge of the Commissioner might hold more promise for creditors than an auction. Here, however, nothing would be paid to the Commissioner for the benefit of every claimant; only certain liabilities, not all, would be assumed in return for the transfer of assets otherwise available for sale by the Commissioner. The proposed plan would eliminate as charges against the new company the claims of an important group of creditors and, because it contemplates transfer of valuable assets, would leave the members of that group in a poorer position to realize anything from the properties of Concord than they would have occupied without the plan. The power to approve of such a plan is not in my judgment included in the powers to rehabilitate and liquidate conferred by Chapters 9A and 30 of Title 17.
I do not overlook the fact that a reorganization which scales down, postpones or even eliminates debts can be based upon the assent of creditors. Can assent be assumed, or is it really necessary, if the affected creditors are to be paid in full from some source other than the resources of the corporation to be reorganized? In the present case there are two negative responses to this: The statute says that no claim of $100 or less shall be paid from the Fund and greater claims are subject to a deduction of $100 (N.J.S.A. 39:6-100); and the same section provides that after a claimant has been paid the State Treasurer "as custodian of the fund shall be entitled to a valid claim against an insolvent insurer, or its liquidator, rehabilitator, conservator, receiver, or trustee in bankruptcy in an amount equal to the liabilities of such insolvent insurer paid from the fund, less the net payments paid into the fund by such insolvent insurer." Thus payment to a claimant from the fund does not eliminate his claim, but after leaving $100 of it unsatisfied, merely shifts its ownership to the Treasurer. There is no showing here that the Treasurer has waived his rights *174 of subrogation or has been asked to do so in anticipation of the execution of the proposed plan. If claims to which the Treasurer would be subrogated are to be adjusted or eliminated by a plan of reorganization, his assent appears to be necessary. Although his power to collect items to which he has been subrogated under the statute should be construed to encompass the power to compromise, I can find nothing in the statutes to justify a construction which would give the Treasurer the power to relinquish entirely claims which would otherwise have some substantial money value even though the relinquishment might be sought for the purpose of furthering some socially desirable end such as continuing an insurance business which has made protection available to a class of car owners who would find it difficult to obtain policies of insurance from other sources. Also, there is possibly a third negative answer to the question stated above: The statute (N.J.S.A. 39:6-94) makes the Motor Vehicle Liability Security Fund available only "for the purpose of securing the benefits under policies of motor vehicle liability insurance on account of claims from accidents occurring within or without this State"; so it appears that there are or may be claims against Concord which will not be paid under the proposed plan and will not be taken care of (subject to a $100 deduction) by payment from the Fund.
Defendant's motion is denied.