**Kimberly A. RAPP, Executrix of the Estate of Edwin R. Rapp. Jr, Kimberly A. Rapp, Administratrix of the Estate of Bradford Rapp, Kimberly A. Rapp, Mother and Natural Guardian of Grace Rapp, a minor, and Kimberly A. Rapp, Individually, Plaintiffs,**

v.

**Abdul M. AWANY, J.C., Professional Agency, Inc., National Continental Insurance Co., Progressive Insurance Group, Defendants.**

No. CIV.00–4067(FSH).

United States District Court,
D. New Jersey.

May 22, 2002.

Cir.1985); *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974)).

Marianne J. Gilmartin, Stevens & Lee, PC, Scranton, PA, Scott Balber, Kelly & Balber, LLP, New York City, for Plaintiffs.

Heli Myyrylainen–Awany, Professional Association, Bloomfield, NJ, Marc L. Dembling, Berlin, Kaolan, Dembling & Burke, Morristown, NJ, for Defendants.

## OPINION

HOCHBERG, District Judge.

This case involves a horribly tragic accident and a tragic set of insurance regulations. Before the Court are Defendants' motions for summary judgment. Oral argument was held on April 16, 2002.

## I. BACKGROUND

This case arises from an August 21, 1998 automobile accident that occurred on Interstate Highway 78 in Pennsylvania. A motor vehicle operated by Edwin R. Rapp, Jr. and a truck, owned by non-party G.S. Freight Lines, Inc. ("G.S.Freight") and operated by its President, Gurdev Singh ("Singh") were involved in the accident. Two of the four occupants of the vehicle— Edwin Rapp and his child, Bradford— were killed in the horrendous accident. Plaintiff, executrix of the estate of her husband, Edward Rapp, and mother of their deceased child, Bradford, brought a personal injury and wrongful death action in the United States District Court for the Eastern District of Pennsylvania. Plaintiff received a judgment in the amount of $27,741,000 entered against Singh and G.S. Freight on May 9, 2001. G.S. Freight's insurance carrier tendered the policy limit of $35,000.

Plaintiff commenced the present action against J.C. Professional Agency, Inc. (collectively "Awany") for broker/agency negligence and against National Continental Insurance Co. and Progressive Insurance Group (collectively "National") for failure to provide greater insurance coverage.

*The Insurance Policy*

At the time of the accident, G.S. Freight was insured by National pursuant to policy number 7953240 with combined single limits for liability of $35,000. The policy had effective dates of March 3, 1998 through March 3, 1999 and was originally issued as a "bobtail policy," which is used for vehicles that are not attached to trailers and are unable to haul anything.

G.S. Freight applied for commercial automobile insurance for a 1986 Mercedes

Benz Tractor ("MB Tractor") by submission of an application dated March 2, 1998 through its insurance broker, Defendant Awany. Singh, on behalf of G.S. Freight, chose $35,000 in liability coverage limits. The decision to take just $35,000 in coverage came after Awany offered higher coverage, coming down a step at a time until Singh chose the minimum coverage. Although Awany preferred to sell a policy with greater coverage, New Jersey insurance regulation set the minimum coverage at $35,000 for motor vehicles. N.J.S.A. 39:6B1. Awany completed the automobile insurance application for the New Jersey Commercial Automobile Insurance Plan (CAIP), for a policy limit of $35,000 as requested by Singh. The CAIP is a plan that requires national carriers to share in the risk of insuring certain insureds; it is an involuntary plan.[1]

When questioned at the time he was completing the application on March 2, 1998, Singh informed Awany that his company did not have a Department of Transportation (DOT) number and did not require ICC or other federal filings. Singh notified Awany that G.S. Freight derived sixty percent of its revenues transporting boxes within New Jersey and thirty or forty percent of its revenues transporting boxes between New Jersey and New York, specifically John F. Kennedy Airport. Awany recorded this information in Section 7 of the CAIP application. The accident vehicle, a 1994 GMC truck, was added to the policy a few weeks later, by endorsement effective March 20, 1998. A

truck can be added to a "bobtail policy" once such a policy has already been issued.

Information was discovered during the Pennsylvania action that G.S. Freight did obtain a DOT number on April 1, 1998, shortly after both the application for the insurance and the addition of the accident vehicle had become effective. Defendants did not receive this information until after commencement of the Pennsylvania action regarding the accident. In addition, Plaintiff produced evidence in the present action that G.S. Freight had submitted a record to the New Jersey Division of Motor Vehicles (DMV) noting that G.S. Freight regularly engages in interstate commerce; this record was not provided to Defendants at the time the application was completed.

The information provided by Singh to the insurance broker on March 2, 1998 is now known to have been false. Unbeknownst to Awany and National, Singh had earlier filed a document with the DMV showing that G.S.Freight derived revenue for other interstate commerce aside from travel to Kennedy Airport. If either Awany or National knew that Singh transported boxes outside New Jersey other than to Kennedy Airport, then Singh would have been required to purchase insurance limits of at least $750,000, the amount required for truckers in interstate commerce.

The insurance application based on the false information given by Singh was

---

1. The involuntary insurance market was created through the enactment of N.J.S.A. 17:29D–1, which permits the Commissioner of Banking and Insurance to adopt "regulations establishing a plan for providing and apportionment of insurance coverage for applicants therefor who are in good faith entitled to, but are unable to procure the same, through ordinary methods." "Every insurer admitted to transact and transacting any line, or lines, of insurance in the State of New Jersey shall participate in such plan and provide insurance coverage to the extent required in such rules and regulations." N.J.S.A. 17:29D–1. The Commissioner of Banking and Insurance adopted the Commercial Automobile Insurance Plan (CAIP), N.J.A.C. 11:3–1.1 et seq., which establishes the guidelines governing the involuntary insurance market.

signed by Singh and Awany. Singh also signed a coverage selection form, stating the following:

I have read the buyer's guide outlining the coverage options available to me. My choices are shown above. I agree that each of these choices will apply for all vehicles insured by my policy and to each subsequent renewal, continuance or replacement or amendment until the insurance company or my designated producer of record receives my request that a change be made.

Awany testified at his deposition that he also made the New Jersey Auto Insurance Buyer's Guide available to Singh by placing it before Singh on the table, but that Singh may not have looked at it or taken it from the table. In addition to signing the coverage selection form, Singh also signed an addendum to the application, which informed the insured about potential liability in connection with giving false or misleading information in the insurance application.

On March 12, 1998, G.S. Freight's CAIP application was assigned to National for processing. On March 14, 1998, National was notified by a Policy Change Request form, that a 1994 GMC truck (the accident vehicle) was to be added to the policy. Singh, on behalf of the insured, signed the Policy Change Request form, again attesting to the truth of the false information he had given in the form. National approved G.S. Freight's insurance application on April 10, 1998, and issued an automobile insurance policy with liability limits of $35,000.

National sent the insured an inquiry about the garaging and use of the GMC truck on April 21, 1998. After receiving no response from the insured, National sent a second request on August 21, 1998. National canceled the policy effective October 17, 1998 for failure of the insured to provide the underwriting information requested by the company. Based upon the CAIP rules in New Jersey, National was required to issue the policy at the limits sought by Singh, absent the knowledge that Singh lied on his insurance application.

*Plaintiff's Cause of Action Against Awany and National*

Plaintiff brings this action against Awany for broker/agency negligence. Plaintiff claims that Awany should have advised Singh that he was required to purchase greater insurance coverage. Plaintiff also asserts a claim against National for damages in excess of the policy limit, alleging that National negligently failed to issue a liability insurance policy of at least $750,000 in coverage as required by federal law. Thus, Plaintiff seeks $715,000, the difference between the $35,000 paid on the policy and $750,000, which she contends was the proper amount of insurance coverage that should have been obtained by Singh and G.S. Freight from Awany and National.

*Defendants' Motions for Summary Judgment*

Defendants claim that the negligence actions against them should be dismissed for one of the three following reasons: (1) Plaintiff has no standing; (2) N.J.S.A. 17:28–1.9 bars Plaintiff's claim; and/or (3) there was no duty owed to Plaintiff pursuant to New Jersey law because Defendants complied with the requirements under the CAIP. Plaintiff Rapp opposes the motion for summary judgment on the grounds that there are genuine issues of material fact in support of her claims against Defendants.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment will be granted if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir.1994).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See Id.* at 322–23, 106 S.Ct. 2548. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

It is clear that if a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (*quoting First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## III. DISCUSSION

### A. Standing

■ Plaintiff has standing to assert claims against Defendants. Numerous cases have recognized that an injured third party who has received a judgment against the insured has standing to pursue the insurer under the rights of the insured. *See, e.g., In re Gardinier's*, 40 N.J. 261, 265, 191 A.2d 294 (1963); *Dransfield v. Citizens Casualty Co.*, 5 N.J. 190, 194, 74 A.2d 304 (1950); *Casey v. Selected Risks Ins. Co.*, 176 N.J.Super. 22, 28, 422 A.2d 83 (App.Div.1980); *Hanover Ins. Co. v. McKenney*, 245 N.J.Super. 282, 287, 584 A.2d 1367 (Law Div.1990). In accordance with this well recognized right, Plaintiff, as a judgment creditor of Singh and G.S.Freight, clearly has standing to sue Defendants in the present case.

Despite the long line of cases that recognize the right of an injured third party to sue the insurer, Defendants argue that Plaintiff does not have standing because the insured has not assigned its right to sue to Plaintiff. Assignment, however, is not necessary because third-party standing against brokers and agents is based solely on the derivative rights of an injured party who has received a judgment against the insured and does not require an assignment of the insured's rights to sue. *See, e.g., Dransfield*, 5 N.J. 190, 74 A.2d 304. Thus, Plaintiff, an injured third party with a judgment against GS Freight, has stand-

ing to assert a claim against Defendants for their alleged negligent failure to provide GS Freight with the minimum policy limits required by federal law.

## B. Statutory Immunity Based on N.J.S.A. 17:28–1.9

Defendants argue that they are immunized by N.J.S.A. 17:28–1.9, which provides that:

Notwithstanding any other provision of law to the contrary, no person, including, but not limited to, an insurer, an insurance producer, a servicing carrier or non-insurer servicing carrier acting in that capacity pursuant to P.L.1983 ... shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits *provide at least the minimum coverage required by law* .... Nothing in this section shall be deemed to grant immunity to any person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.

b. The coverage selection form required pursuant to section 17 of P.L. 1983, c. 362 (C.39:6A–23) shall contain an acknowledgment by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no person, including, but not limited to, an insurer [and] an insurance producer ... shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive cover-

age, except for that person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.

Defendants argue that the statute immunizes them because Singh acquired the minimum insurance required by law (based on the facts known to the broker and carrier) and there is no genuine issue of fact tending to show that either Defendant caused Plaintiff's damages by willful, wanton or grossly negligent acts.

Plaintiff argues that the statutory immunity is inapplicable because (1) Awany failed to provide Singh with a Buyer's Guide, as required by N.J.S.A. 39:6A–23; and (2) statutory immunity only applies where at least the minimum insurance coverage required by law was provided and it is now known that G.S. Freight did not have the minimum insurance required by law.

### 1. The Buyer's Guide

■ At oral argument Plaintiff's counsel stated that Awany's testimony at his deposition "makes clear that a copy of the buyer's guide was not provided [to Singh]." However, the following is the testimony:

Q. Did you provide a copy of [the Buyer's Guide] to Mr. Singh?

A. [Mr. Awany] It was there for him to read but I don't think he read it.

Q. Did you offer it to him, though?

A. Yeah

Plaintiff's counsel told the court that "Mr. Awany's testimony is the only evidence in this case [regarding the Buyer's Guide]," and Awany testified that he *did* provide Singh the Buyer's Guide. The statutes do not require that an insurance broker force an insured to read the Buyer's Guide. Rather, N.J.S.A. 39:6A–23, the requirements of which are preconditions to qualifying for immunity under N.J.S.A. 17:28–1.9, states that "the application for the policy [be] *accompanied* by a written notice identifying and containing a buyer's

guide and coverage selection form." This can even occur by mail, where it would not be possible for a broker or carrier to know if the insured read the booklet in the privacy of his home. Giving Plaintiff all favorable inferences, there is no material question of fact that the Buyer's Guide "accompanied" the application for an insurance policy. Plaintiff is correct that in *Avery v. Wysocki*, 302 N.J.Super. 186, 695 A.2d 283 (App.Div.1997), the court held that strict compliance with the statute is necessary. However, here there is no evidence that Defendants did not strictly comply with the statute. This is absolutely clear as to National, because it received—by mail from the broker—the coverage selection form signed by Singh, attesting that he read the Buyer's Guide, leaving no reason for National to believe otherwise.

### 2. Statutory Construction of N.J.S.A. 17: 28–1.9

■ The statute provides immunity when an insurance agent or insurance provider provides at least the minimum insurance required by law. However, the broker or provider's obligation to provide at least the minimum coverage is not a strict liability requirement. Such a construction would nullify the exception for a "willful, wanton or grossly negligent act of commission or omission." Absent strict liability, the requirement is read to mean that the broker and carrier must provide at least the minimum insurance required by law, based on the information supplied by an applicant. If the application has inconsistencies, the broker or provider must check into those inconsistencies, but neither the agent nor the carrier is the guarantor of the truth of the applicant's statements.

■ Plaintiff's counsel argues that there are genuine issues of fact that tend to show that Defendants were grossly negligent in failing to notice that $35,000 was not the minimum insurance required. First, Plaintiff produced a document that was on file with the State indicating that G.S. Freight engaged in interstate travel. Second, Plaintiff argued that in the application itself, Singh stated that he traveled from New York to New Jersey, thereby engaging in interstate travel. Plaintiff's counsel argues that both documents should have put Awany and National on notice that G.S. Freight was engaged in interstate travel and thus was required to have at least $750,000 of insurance under the Federal Motor Carrier Act.

This Court is exceedingly sympathetic to Mrs. Rapp and horrified that New Jersey insurance regulations permit an intrastate trucker to carry such a small amount of insurance coverage. However, this Court cannot let its sympathy for Mrs. Rapp to overturn the legislation granting immunity to agents and carriers who are compelled to cover insureds such as Singh and G.S. Freight under the mandatory CAIP rules. Absent an inconsistency on the face of the application, Defendants had no obligation to investigate every statement listed on G.S. Freight's application. While it was not impossible for Defendants to initiate an investigation that would have unearthed the document that revealed interstate travel (other than to Kennedy Airport), there were no inconsistencies on the face of the application alerting Defendants to such a need. In mandating that carriers take the assigned risks inherent in CAIP, the legislature has not required an audit of every single application to unearth other public document filings that would reveal Singh's lie.[2]

---

**2.** CAIP rules require a state minimum coverage of $35,000 liability limits. Aside from

providing such coverage, Defendants had no further obligation under the rules because the

Likewise, Plaintiff's claim that Defendants were alerted to interstate travel by the indication of travel between New Jersey and Kennedy Airport in New York is undermined by the regulation that explicitly exempts such travel from the definition of "interstate travel." 49 C.F.R. § 372.235. Therefore, the travel shown on the application does not require the higher insurance minimum.[3] There were, therefore, no indications of inconsistencies on Singh's insurance application. Based upon the facts set forth in the application, Defendants provided the minimum insurance required by law. Singh clearly misled Awany and National. He should not be allowed to participate in CAIP. He and his truck should not be on the roads, whether in New Jersey or interstate. His lies allowed him to drive a truck while woefully underinsured, to the great detriment of Plaintiff. Singh committed an atrocious act to save a huge amount of money on his insurance premiums. All other drivers in the state are also victimized by him, although the suffering is felt most acutely by Mrs. Rapp. However, the law does not use Singh's possibly criminal act to strip the agent and carrier of their immunity for participating in CAIP.

Construing all inferences in favor of Plaintiff, there is no genuine issue of material fact regarding the provision of the Buyer's Guide to Singh. Based on the facts sworn by Singh to Defendants, there is no genuine issue of fact that could lead a reasonable jury to conclude that Defendants were willful, wanton or grossly negligent in believing that they had issued a policy providing the minimum insurance required by law, thereby cloaking Defendants with statutory immunity.[4]

## IV. Conclusion

It is unfortunate that Federal law requires that trucks engaged in interstate commerce carry a minimum insurance of $750,000; it is disastrous that State law requires a minimum of only $35,000 for trucks engaged solely in intrastate commerce. The rational basis for having such a tremendous disparity is lost on this Court. The dangers of a truck traveling on the roads within a state are unrelated to the distances the truck travels and states the truck visits. This case is the perfect example of the problems associated with having such a wide gap between State and Federal requirements relating to insurance minimums. The New Jersey legislature should dramatically raise the

mandatory premium audit required by Section 25 of CAIP did not apply to the policy issued since the insurance applicant did not have an ICC filing or MCC 90 Form.

3. Plaintiff's counsel, at oral argument, argued that Defendant's expert stated that there was no exception for travel to Kennedy Airport. In giving every possible inference to Plaintiff, the Court scrutinized the expert's deposition to determine if there was any genuine issue of fact as to whether Kennedy airport is a "commerce free zone" exempted from the definition of interstate travel. There simply is no dispute on this issue. Federal regulations exempt such travel from the definition of interstate commerce.

In the lines cited from Mr. Lebson's deposition by Plaintiff's counsel at oral argument,

the expert merely stated that, knowing all the true facts that he knew at the time of the deposition, G.S. Freight should have had more insurance. This fact is not in dispute. However, that was neither the question posed by the Court nor the issue in this case. The question is whether, given all that Defendants knew at the time of the insurance application, and given any further investigation that would have been required by any inconsistencies, did G.S. Freight have at least the minimum insurance required by law. The answer to that question is "yes."

4. Since the statutory immunity disposes of the case, the Court does not reach Defendants' other bases for summary judgment.

mandatory minimum level of insurance coverage required by truckers to avoid huge uncollectible judgments arising from horrific accidents. However, when the state requires insurers to participate in a plan to provide involuntary insurance, it is just and fair to provide immunity to brokers and insurance providers that follow the requirements of the law. Herein, giving Plaintiff the benefit of all favorable inferences, there is no material issue of fact regarding Defendants' compliance with the statutory requirements for immunity. The Court therefore grants summary judgment in favor of Defendants.

An appropriate order will issue.