# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1154-20

W.R. and S.R., as the
natural guardians for their
unemancipated minor son, J.R.,
and W.R. and S.R., individually,

    Plaintiffs-Appellants,

v.

K.G., J.G., and S.G. (a minor),

    Defendants-Respondents.

_____

Argued March 9, 2021 – Decided April 6, 2021

Before Judges Fisher, Moynihan and Gummer.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Somerset County,
Docket No, L-0584-20.

William Strazza argued the cause for appellants (Law
Office of William Strazza, LLC, attorneys; Matthew J.
Werner, on the briefs).

James C. Jensen argued the cause for respondents
(Laufer, Dalena, Jensen, Bradley & Doran, LLC,

attorneys; James C. Jensen, of counsel and on the brief;
Kory A. Crichton, on the brief).

PER CURIAM

We granted leave to appeal to consider what rights may have accrued to plaintiffs once defendants refused to tender the claim to their liability insurer. Because an injured party obtains a protectable interest in a tortfeasor's liability insurance "upon the happening" of an alleged covered event, In re Estate of Gardinier, 40 N.J. 261, 265 (1963), we conclude plaintiffs are entitled in these circumstances to communicate with defendants' insurer and, if necessary, file a declaratory judgment action against the insurer without first obtaining a judgment on their claim. In light of that holding, we need not at this time offer an opinion on the remaining issue: whether, in these circumstances, the court should have compelled defendants to tender the claim to their insurer.

In May 2020, plaintiffs W.R. and S.R.[1] filed a verified complaint seeking damages for injuries caused by what they alleged was an inappropriate relationship between J.R., their minor son, and his girlfriend's mother, defendant K.G. (Karen); Karen's husband and their daughter, S.G., were also joined as defendants. The complaint alleged Karen's "willful and wanton psychological

---

[1] We use initials and fictitious names because of the involvement of minors in this litigation.

torment and sexual grooming" of J.R., and the other defendants' negligence in failing to report or prevent Karen's conduct. Plaintiffs also, both for themselves and on behalf of their son, claim defendants' conduct caused them injuries and psychological damage. The complaint's four counts consist of: two counts of intentional infliction of emotional distress; one count of negligent failure to warn; and one count of causing loss of affection and companionship. Karen has vehemently denied all allegations, arguing she was merely "helping guide a troubled minor."

Along with filing their verified complaint, plaintiffs sought and obtained an order that temporarily restrained communications between defendants and J.R., and required defendants to show cause why plaintiffs were not entitled to preliminary restraints. Soon after, plaintiffs served discovery requests, which included a demand for insurance information as permitted by Rule 4:10-2(b). Meanwhile, defendants consented to an order extending the temporary restraints and elected not to oppose plaintiffs' application for a preliminary injunction.

Defendants also filed an answer and counterclaim, and noticed plaintiffs' depositions. Despite the deposition notice and defendants' subsequent motion to compel plaintiffs' depositions, plaintiffs refused to proceed with any substantive discovery until defendants provided insurance information as

required by Rule 4:10-2(b), and until defendants submitted a copy of the verified complaint to their insurer. Defendants, however, refused to "drag [their] insurance company" into what they viewed as a "frivolous lawsuit" having, in their view, the "sole purpose of . . . inflict[ing] emotional and financial harm." This response prompted plaintiffs to move to compel production of the requested insurance information and documents.

The trial judge granted defendants' motion to compel plaintiffs' depositions and plaintiffs' cross-motion to compel defendants' compliance with Rule 4:10-2(b). The judge's August 28, 2020 order expressly barred plaintiffs from contacting defendants' insurance carrier, stating that, unless otherwise ordered, plaintiffs "shall not contact [d]efendants' carrier for purposes of submitting [p]laintiffs['] complaint to [d]efendants' carrier for that carrier to consider defense or indemnification of the [d]efendants." The injunction was not something defendants affirmatively sought; it seems to have grown organically from the argument about the discovery motions. When the judge asked defense counsel why he hadn't turned over to plaintiffs a copy of the insurance policy, counsel said he would but he "just wanted to make sure [plaintiff's counsel] is not going to contact the homeowners insur[er]." The judge immediately responded, "he's not[;] [h]e's not going to do that." When plaintiff's

counsel got the opportunity to speak, he said he: "respectfully disagree[d]" with the judge's admonition; believed he "cannot be ordered not to contact the carrier"; and revealed he had "every intention of contacting the carrier" because his clients "are third-party beneficiaries to that policy." The judge then held that plaintiffs are not third-party beneficiaries until "there's a judgment" and enjoined plaintiffs from contacting the insurer.

Defendants provided some insurance information but plaintiffs responded that the copy of defendants' homeowners' insurance policy was incomplete, the provided "four-page declaration sheet" did not constitute the full policy, and the effective dates of the insurance policy listed in the declaration sheet did not cover the period of plaintiffs' alleged loss. Plaintiffs demanded that defendants both cure these deficiencies[2] and "present[] [the claim] to [their] carrier for coverage and defense."

Deprived by the injunction of the opportunity to engage in self-help, plaintiffs moved for an order compelling defendants to report the claim to their insurance carrier; plaintiffs argued they are third-party beneficiaries of defendants' insurance contract and that a "concomitant right exists to sue the

---

[2] We were advised during oral argument that the entire applicable homeowners' policy has now been turned over to plaintiffs.

A-1154-20

insured to establish coverage in the event the insurer refuses to provide[] liability coverage."  The judge denied this motion on November 2, 2020, and, in his oral decision, said: "[i]f the [d]efendants decide that they're simply not going to seek coverage, and do not tender the [c]omplaint to the insurer for defense and indemnity, then there is no third-party beneficiary," and defendants would "assume the risk" of their own actions.  The judge amplified this ruling by recognizing defendants' right to "roll the dice" without interference from plaintiffs, and by stating plaintiffs' claim to third-party-beneficiary status accrues only "if and when there's a judgment."

We granted plaintiffs' motion for leave to appeal and now reverse in part the August 28, 2020 order and dismiss without prejudice the appeal of the November 2, 2020 order.

Plaintiffs' appeal is based on their claim that injured persons hold a "special third-party beneficiary" relationship with their alleged tortfeasors' liability insurers.  This relationship, plaintiffs argue, empowered the court to compel defendants to tender the claim to their insurer.  They claim an interest in collecting on any judgment they might ultimately obtain and are concerned that if defendants fail to turn over the verified complaint to their insurer, their inaction may cause a loss of that potential source for collecting on a judgment.

A-1154-20

A good place to start our analysis is Rule 4:10-2(b), which allows a litigant to request and obtain "discovery of the existence and contents of any insurance agreement under which any . . . insurance business may be liable to satisfy part or all of a judgment . . . or to indemnify or reimburse for payments made to satisfy the judgment." This Rule exists not just to humor curiosities; it serves the goal of facilitating settlement by enlightening claimants about the funds available to satisfy any judgment they might obtain. See, e.g., Moslimani v. Union Valley Corp., 271 N.J. Super. 147, 149 (Law Div. 1993).

In most cases, the request for insurance information produces little or no litigation, since most defendants covered by insurance for the claim asserted recognize it is usually sensible and prudent to tender the matter to their insurer; in those circumstances, the defendant readily provides the information and in the vast number of cases, the plaintiff need do nothing more to protect any rights available at the end of the day. The question presented here is whether there is anything a plaintiff can do when a defendant chooses not to advise an insurer of a claim, generating the possibility that the uninformed insurer will later disclaim because of the lack of timely notice.

Defendants' decision to withhold information about this claim from its insurer is understandably disconcerting to plaintiffs. Insurance policies

A-1154-20

routinely contain provisions that obligate the insured to provide timely notice of a claim so the insurer may exercise its right to takeover and control the defense as a means of limiting its risk and exposure. An insured's failure or refusal to timely notify an insurer poses a risk of loss of any benefits the insurance may provide. See, e.g., Cooper v. Gov't Emp. Ins. Co., 51 N.J. 86 (1968); Polarome Mfg. Co. v. Commerce & Indus. Ins. Co., 310 N.J. Super. 168, 175 (App. Div. 1998). Insureds may be free to run that risk for themselves – as the trial judge said, "roll the dice" – but an insured's decision may also put the claimant in jeopardy of losing an avenue of recovery if the insurer is later justified in declining coverage because of the insured's inaction. That is plaintiffs' concern. The judge, by first enjoining plaintiffs from notifying defendants' insurer in his August 28, 2020 order, and then by denying plaintiffs' motion to compel defendants to notify the insurer in his November 2, 2020 order, left plaintiffs in the precarious position of only hoping – if their suit eventually bears fruit – that they will be able to obtain recourse from the insurer.[3] It is out of concern for these doubtful circumstances in which plaintiffs find themselves that we granted leave to appeal.

---

[3] We assume, without deciding, that plaintiffs have asserted a claim that falls within the insuring clause of any insurance policies possessed by defendants.

Plaintiffs correctly argue that, in the eyes of the law, they obtained an interest in any contract possessed by defendants that would, in the words of Rule 4:10-2(b), make the other contracting party "liable to satisfy part or all of a judgment which may be entered in the action." There is no novelty in this argument; the Supreme Court has repeatedly held that "upon the happening of an accident the injured third party acquires an interest in the [tortfeasor's] policy." Estate of Gardinier, 40 N.J. at 265; see Feuchtbaum v. Constantini, 59 N.J. 167, 177 (1971); Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 397 (1970); Dransfield v. Citizens Cas. Co. of N.Y., 5 N.J. 190, 194 (1950); Century Indem. Co. v. Norbut, 117 N.J. Eq. 584, 586 (Ch. 1935), aff'd o.b., 120 N.J. Eq. 337 (E. & A. 1936). Judge Conford expressed this concept as representing a "strong public policy in this State favoring the availability to injured persons of the liability insurance of those whose negligence is the cause of their plight." Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 321 (App. Div. 1967).

Although this interest has been most frequently expressed, as in all the cases cited above, when describing an injured party's relationship to a defendant's auto insurance – because that insurance is legislatively-mandated and its existence and applicability of great public interest – we see no reason why other persons injured by means other than an automobile should have a

lesser right to protect their dormant right to recover from the tortfeasor's insurer. See, e.g., Manukas v. Am. Ins. Co., 98 N.J. Super. 522, 525 (App. Div. 1968) (recognizing this interest when the plaintiff was injured on church property); see also Atl. City v. Am. Cas. Ins. Co., 254 F. Supp. 396, 398 (D.N.J. 1966) (applying New Jersey law and recognizing the plaintiff's interest in the city's liability insurance policy "upon the happening of [her bathing] accident" at a city beach). And, as Judge Havey observed in Werrmann v. Aratusa, Ltd., 266 N.J. Super. 471, 475-76 (App. Div. 1993), a patron obtained an interest in a restaurant's insurance policy at the time of the injury regardless of "whether the insurance is mandatory or optional." In adhering to that view, we conclude – regardless of whether mandatory or optional – that "[a] liability insurance policy creates rights not only for the policy holder but as well for those to whom reparations will be made." Samuel v. Doe, 158 N.J. 134, 142 (1999).

The trial judge's holding in this case was based on a view that third-party-beneficiary status cannot serve as a basis for plaintiffs' pursuit of their rights until they obtain a judgment. To be sure, it has been held that a plaintiff's relationship to a tortfeasor's liability insurance does not ripen into an actionable claim for monetary relief from an insurer until the plaintiff obtains a judgment against the insured. See Estate of Gardinier, 40 N.J. at 266 (recognizing the

10

insured has a right to pursue "an action . . . upon the policy after judgment against the insured"); <u>Dransfield</u>, 5 N.J. at 194 (recognizing the insured has "'a cause of action the moment he is injured" which ripens into a right of action "when he recovers a judgment against the assured" on demonstrating the insured is "insolven[t]," quoting <u>Century Indem. Co.</u>, 117 N.J. Eq. at 587). The problem here for plaintiffs is that there may be no recourse against the insurer if it is kept in the dark about this suit until judgment is entered. <u>See</u> <u>Cooper</u>, 51 N.J. at 94.

In essence we are asked whether plaintiffs should be required to wait – maybe years – until the end of this litigation, and if they prevail, only then press their claim against the insurer. All that time plaintiffs face the potential that the insurer might not, at the end of the day, indemnify defendants because defendants failed to give timely notice of the claim. Milton may have said "[t]hey also serve who only stand and wait"[4] but that was in a different context. If plaintiffs must wait without certainty about what defendants' insurer might do if not given timely notice, they might not be served at all.

We conclude that when an alleged tortfeasor fails or refuses to notify a liability insurer, a plaintiff shouldn't have to just sit back and hope relief awaits

---

[4] John Milton, <u>On His Blindness</u> (1655) (also known as "When I Consider How My Light is Spent").

A-1154-20

at the end of the day. We are unaware of any legal or equitable impediment to plaintiffs presently seeking a declaratory judgment against defendants' insurer; as we said in <u>Manukas</u>, even though the plaintiff there could not maintain a prejudgment action for damages against the church's insurer, the plaintiff "could have included a declaratory judgment action against [the church's insurer] in the action against the church, or instituted a separate declaratory judgment action joining the church as a party." 98 N.J. Super. at 525.

The rights provided by the Declaratory Judgment Act[5] are "remedial," exist "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and should be "liberally construed and administered" to those ends. N.J.S.A. 2A:16-51. The unusual position taken by defendants in refusing to notify their liability insurer has generated for plaintiffs "uncertainty and insecurity," <u>ibid.</u>, a circumstance that creates a sufficient justiciable controversy, <u>see, e.g.</u>, <u>In re Vicinage 13 of Superior Ct.</u>, 454 N.J. Super. 330, 337-38 (App. Div. 2018), to allow plaintiffs' commencement of a declaratory judgment action against defendants' insurer to protect their interests.

In drawing this conclusion, we remain mindful that the Supreme Court has, in different contexts, said that "[g]enerally, plaintiffs in tort actions may not

_____

[5] N.J.S.A. 2A:16-50 to -62.

12

directly sue insurers," Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556, 566-67 (1999), and "a stranger to an insurance policy has no right to recover the policy proceeds," Ross v. Lowitz, 222 N.J. 494, 512 (2015) (quoting Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J. Super. 546, 553-54 (App. Div. 1999)). Our holding is not inconsistent with these general principles. We acknowledge, as held in Ross, that plaintiffs are not entitled to seek the policy proceeds until they obtain a judgment falling within the parameters of the insurer's agreement to indemnify. It is because defendants have refused to tender the defense to their insurer that we conclude plaintiffs are entitled – notwithstanding the above-quoted general statement in Cruz-Mendez – to assert a claim against the insurer that simply seeks a declaration of the insurer's rights and obligations regarding this claim. We see nothing in any of the cases we have cited to so limit the reach of the Declaratory Judgment Act in these circumstances. Not one of the courts that produced the cases we have cited was asked to consider the application of the general legal principles we have quoted when the alleged tortfeasor had refused to advise an insurer of the claim.

And since, as we have held, plaintiffs may commence a declaratory judgment action against defendants' insurer, then they certainly may communicate with the insurer without further delay. Indeed, such a

communication could – depending on the insurer's response – short-circuit plaintiffs' need to sue for a declaratory judgment and may have the salutary effect of avoiding unnecessary litigation. Such an approach should have been encouraged rather than enjoined.

We, thus, reverse the judge's August 28, 2020 injunction against plaintiffs' communication with defendants' insurer. The remainder of the interlocutory appeal – that part in which plaintiffs seek reversal of the judge's November 2, 2020 denial of plaintiffs' motion to compel defendants to tender the claim to the insurer – is dismissed without prejudice.

Reversed in part and dismissed without prejudice in part.[6]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The trial court also entered an order sealing the record under Rule 1:38. We express no view as to either the propriety of that order or its impact on plaintiffs' ability to communicate or sue the insurer.

A-1154-20